CULLEN, J.
This is an action to recover damages for personal injuries. The plaintiff, with a number of others, was riding-in a truck, along Myrtle avenue, in the suburbs of the city of Brooklyn. On that highway the defendant operates a double-track railway, with dummy or steam engines, drawing short trains of cars. According to the story told by the plaintiff’s witnesses, the wagon was proceeding towards the city, in the right-hand track, when, from behind them, was heard a whistle of a train moving in the same direction. To enable this train to pass, the wagon was driven over to the left-hand track. As soon as' the train passed, the driver turned out of the left-hand track towards the track on which he had been originally going. Before he succeeded in entirely clearing his truck from the left-hand track, a train coming from the city struck the end of his wagon, the occupants of the wagon were thrown out on the ground, and the plaintiff was severely injured. The witnesses for the plaintiff testified that the condition of the highway was such that the wagon could not turn out to the right on the approach of the train from the rear, but was compelled to turn into the other track. The defendant denied the truth of this story, and asserted that the wagon was on the left-hand side of the highway, outside of the tracks, when suddenly it was turned across the track, in front of the approaching train. We think it clear that these facts presented a proper case for the jury. The ease was not that of an ordinary *141 steam railroad, operating its trains over its own right of way The rights of the defendant were no greater than those of any other street railroad, whether operated by horses or electricity. It had only a paramount, not an exclusive, right of way. Fleckenstein v. Railroad Co., 105 N. Y. 655; 8 St. Rep. 82. Therefore, if the condition of the highway was such as to make it necessary for vehicles to drive in the defendant’s tracks, it was right that they should do so.
The serious question that arises on this appeal is whether the negligence of the driver, if any, was to be imputed to the plaintiff. The trial court charged that it was not. Though, as already stated, we think that negligence on the part of the driver was not established as a matter of law, this will not save the verdict, if the charge in the respect quoted was erroneous, for the jury might have found, as a matter of fact, that the driver was negligent. The principles applicable to the determination of this question are, we think, clear and well settled. In Robinson v. Railroad Co., 66 N. Y. 11, it was held that the contributory negligence of the driver could not be attributed to one riding in a vehicle, where the person so riding had no control of the vehicle nor of the driver in its management; that the person riding was only liable for the negligence of the driver where there existed the relation of principal and agent, or of master and servant, or they were engaged in a joint enterprise, in the sense of mutual responsibility for each other’s acts. This decision has been repeatedly followed. Dyer v. Railroad Co., 71 N. Y. 228; Hoag v. Railroad Co., 111 id. 199; 19 St. Rep. 80; Crawford v. Railroad Co., 121 N. Y. 652; 30 St. Rep. 866. As to Callahan v. Sharp, 27 Hun, 85; 95 N. Y. 652, seemingly against the rule above stated, a curious error has crept into the reports and digests. The case was first decided in accordance with the opinion reported, but, a reargument having been had, the case was decided exactly contrary to the first decision. This last decision is not reported, but it is this decision, and not the reported decision, that was affirmed by the court of appeals in 95 N. Y. 652.
The ground on which it is sought to charge the plaintiff in this case with the negligence of the driver is that he, with the driver and the other occupants of the wagon, were engaged in a joint enterprise. It appears, by the evidence, that the parties had gone out on a picnic, having borrowed the horses and vehicle; that the driver was one of their own number, who was selected to drive. As to how this picnic was arranged, and as to what part the several persons took in its management, the evidence is very meager, and is still more meager as to the part the plaintiff took in in it. I think enough appears in the evidence, however, to justify the statement of facts already given, and also to warrant the conclusion that all the parties, other than the plaintiff, were engaged In a common enterprise. As to the connection of the plaintiff with the control and management of this excursion, the following is the only evidence. The plaintiff testifies :
“ That day I went out on a picnic. Was invited to a picnic and went with them. It was called the ‘Albert Schneible Asso *142 ciation.’ I was invited to go by Christian Seigrist. He is here."
Seigrist testifies:
“ I recollect Joseph Kessler going. Q. How did he come to goon that? A. I invited him. I asked Mr. Smith if he could not come, and he says, ‘All right.’ I asked Joseph to come. I asked Mr. Kessler,—‘ Mr. Smith, could he come ? ’ And he says, ‘All right; he could come and have a day's fun with me.’ ”
Neither party saw fit to inquire further into the relation of the plaintiff .to this excursion. It does not appear that he anywise took part in its organization, that he paid or contributed anything for its expense, that he had anything to do with its management or control, or that he was a member of the association. The testimony is that he “was invited to go." I think the fair interpretation of this statement is that he was to go merely as a guest. This certainly appears to have been the understanding at the trial.
A motion was made to dismiss the complaint at the end of the plaintiff's evidence. The defendant urged that the plaintiff, with the others, were all engaged in the one enterprise. To this the court remarked: “This boy appears to have been a guest, according to the testimony.” The counsel answered that it made no-difference whether he was a guest or not, that the rule was the same; but there was no denial that he was a guest, or any claim that the testimony was susceptible of a different inference. If we assume, as we "think we must, that this plaintiff was merely a guest, when we are of the opinion that any negligence on the part of the driver of the vehicle could not be attributed to him. It is doubtless true that, in one sense, he was engaged in a common enterprise with the others; that is, to go on the-excursion and enjoy the picnic. This alone, however, did not make him responsible for the acts of the driver. To be engaged in a joint enterprise, so as to make one of the parties thereto responsible for the act of the other, the party must have some voice in the control, management, or direction of the enterprise. In such case, even if any part of the work is delegated to one, the others are liable for his acts, because, as between the parties, the relation of principal and agent exists, as it does among partners. Between one who has no voice or control in the management of an enterprise, and no right to share in any, and those who are actually conducting the enterprise, it is plain that no relation of principal and agent exists orean exist. The sole ground of imputed liability, whether of contributory negligence or of injuries done others by negligence, is that the party has some right, voice, or control in the conduct of the enterprise. We can see no distinction in principle between one riding in a vehicle upon the invitation and as the guest of one person or of a dozen. If he is a guest, the question of liability is the same in either case. The plaintiff was, therefore, responsible only for his own negligence.
The judgment and order denying a new trial should be affirmed,, with costs.
All concur.