## STRAUSS v. NEWBURGH ELECTRIC RY. CO.

(Supreme Court, Appellate Division, Second Department.    June 23, 1896.)

1. STREET CARS—COLLISION WITH VEHICLE—NEGLIGENCE.
In an action for injuries caused by collision with a street car it appeared that when the car was about 70 feet away the horse drawing the wagon in which plaintiff was riding backed the wagon on the track, and the driver was unable to get him off.  As the car approached, the driver of the wagon and others shouted to stop it, but it struck the wagon, threw out the occupants, and ran between 40 and 70 feet before it came to a stop. The accident occurred about dusk on a clear evening.  The motorman testified that he first saw the wagon about 150 feet distant, and that the horse was a little uneasy.  He also testified that the car was running about four miles an hour.  There was evidence that a car running four miles an hour could be stopped within 10 feet.  *Held*, that the question of defendant's negligence should have been submitted to the jury.

2. SAME—CONDITION OF VEHICLE AFTER ACCIDENT.
In such case the condition of the wagon after the accident is material as bearing on the speed at which the car was moving when it struck the wagon.

3. IMPUTED NEGLIGENCE—DRIVER OF VEHICLE.
Negligence of the driver of a vehicle cannot be imputed to a person riding in it merely as the driver's guest, and without any control over the vehicle or the driver.

4. EVIDENCE—OPINION—SPEED OF ELECTRIC CAR.
A witness who states that he saw defendant's car as it approached the place where it struck plaintiff, that he had timed the running of electric cars once on another road, that he had noticed the speed of steam cars, that he had noticed horses trot and run, and knew the rate of speed at which they were going, and had made calculations on their rate of speed, may testify as to how fast, in his opinion, the car was going when it struck plaintiff.

Appeal from trial term, Orange county.

Action by Solomon Strauss, as administrator of the estate of Pauline Moses, deceased, against the Newburgh Electric Railway Company, to recover damages for the death of plaintiff's intestate. The complaint was dismissed on the merits, and plaintiff appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Louis Marshall, for appellant.
Johnson & Lamb, for respondent.

PER CURIAM.    Plaintiff's intestate was killed on the 4th day of July, 1894, by an electric trolley car operated by defendant upon its tracks located upon Bridge street in the city of Newburgh.    The proof upon the part of plaintiff tended to establish that deceased, with her two daughters, were seated in a vehicle drawn by one horse, and driven by William Pfeiffer.    The answer admitted that deceased was an occupant of the vehicle at the invitation of its driver, and the evidence was that she had no control over or voice in its management.    Pfeiffer drove the horse upon Bridge street.    When he was informed by deceased that a car was approaching, he drove along the street on its right side, and clear of the tracks.    As the

car approached, and when about 70 feet away, the horse became uneasy, and stopped and backed the wagon upon the track.    Pfeiffer used his whip upon the horse, and tried to get the wagon from the track, but was unable to do so.    When the car was from 50 to 70 feet away, Pfeiffer and some other people near by shouted to stop the car, but the warning proved unavailing.    The car struck the wagon, shattered and tore it loose from the horse, and ran a distance of from 40 to 70 feet before it came to a stop.    The occupants of the wagon were thrown out, and plaintiff's intestate received injuries from which she subsequently died.    It was a dry, clear evening, about dusk, and when the motorman first saw the wagon he states that it was about 150 feet away, and that the horse was a little uneasy.    He testified that the car was running, at the time of the accident, four miles an hour.    It was shown by other testimony that a car run at this rate of speed could be stopped under the existing conditions in from six to eight feet, and with an ordinary brake within ten feet.    There was considerable more testimony bearing upon the negligence of the defendant.    We do not deem it necessary, however, to state more.    It was clearly sufficient to require the submission of the question to the jury, and the refusal of the court so to do was error.    So far as the question of contributory negligence was concerned, if plaintiff's intestate was chargeable with the negligence of Pfeiffer, there was evidence presented which would have supported a finding exonerating him therefrom.    But his negligence was in no wise chargeable to deceased. She was there by his invitation, as his guest, and had no control or direction over the management of the vehicle.    Consequently she was not chargeable with his negligence.    Kessler v. Railroad Co., 3 App. Div. 426, 38 N. Y. Supp. 799.    Whether she omitted any duty to care for herself was, under the evidence, a question for the jury. This disposes of the case.    But, as there were rulings excluding evidence offered upon the trial, which we regard as erroneous, a brief discussion is necessary for future guidance.    James Connell was sworn as a witness, and testified that he saw the car as it approached the place of the accident for a distance of 50 to 75 yards. He stated that he had timed the running of electric cars once on another road; that he had noticed the speed of steam cars; that he had noticed horses trot and run, and knew the rate of speed at which they were going, and had made calculations of their rate of speed.    He was then asked: "Q. Having all those things in your mind, how fast do you say this car was going at the time you saw it?"    This was objected to, the objection was sustained, and plaintiff excepted.    He was then asked to describe the speed of the car, and this was excluded.    The evidence should have been received. Salter v. Railroad Co., 59 N. Y. 632; Northrup v. Railroad Co., 37 Hun, 299; Scully v. Railroad Co., 80 Hun, 197, 30 N. Y. Supp. 61. Pfeiffer, as a witness, was asked, respecting the condition of the wagon after the collision: "Q. What was the appearance of that axle when you saw it?"    The court excluded the testimony, saying: "The appearance of the axle or the wheels is entirely immaterial. You can't prove what happened to the wagon in this case, because

the wagon isn't involved. I don't say that the wagon can't be referred to." Plaintiff excepted. One Grogan was called, and asked respecting the condition of the wagon after the accident, and also respecting the condition of the planks in the street where the accident occurred, and over which the wagon was driven by the car. Also as to the condition of the ground, and as to a furrow being made therein. This was excluded, and exception was taken. The evidence should have been received. It bore directly upon the character and force of the collision and the speed of the car. If the axle, which appeared to be of iron, was bent and twisted, if planks were torn up, and furrows made in them and the ground, and the distance which these marks extended, it furnished evidence more or less conclusive of the fact whether the car came at a high or low rate of speed, with slight or great force, and it all bore upon the question of defendant's negligence in the management and operation of the car. Besides, the question of how far the car ran after the collision was in controversy, and the marks upon the ground and planks was pertinent evidence upon that point, and, dependent upon its character, might prove practically conclusive of that question.

For these reasons the judgment should be reversed, and a new trial granted, with costs to abide the event.