tion 65 property cannot be taken. If the defendant refuses to pay the fine imposed, the only alternative is imprisonment. Code Cr. Proc. § 487. This, therefore, was in every particular a criminal, and not a civil, proceeding, and was the only proceeding that could properly be brought. It follows that this appeal must be dismissed, and it is, therefore, unnecessary to decide the other questions in the case.

Appeal dismissed, with costs.

---

(30 App. Div. 438.)

### BERGOLD v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department.   May 24, 1898.)

IMPUTED NEGLIGENCE—ACCIDENT AT CROSSING.

The fact that a woman who is riding in a carriage at the invitation and as the guest of the driver, a competent and sober man, warns him of danger just before they reach a railway track, does not constitute such an assumption of authority or control as to impute to her liability for his negligence, which contributes to an accident resulting in injury to her.

Appeal from trial term, Kings county.

Action by Eva Bergold against the Nassau Electric Railroad Company. From a judgment for defendant and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

James D. Bell, for appellant.

Clarence J. Shearn (Henry Yonge, on brief), for respondent.

WOODWARD, J.   The plaintiff in this action, accepting the invitation of one Joseph Huber, rode with him on the night of December 11, 1895, from the residence of Dr. Richards, on Linden Boulevard, Brooklyn, to the scene of the accident which gives rise to this controversy, on her way to the Broadway Ferry. The vehicle used was a single-seated side-bar buggy, with a top. She sat on the left-hand side, and Mr. Huber, who appears to have been a competent driver, sober, and in every way qualified, sat on the right-hand side, of the buggy, and drove the horse. They drove up Linden avenue. The plaintiff knew that there was a railroad on Rogers avenue, which they were to cross, and when near that avenue she says she saw a car a long block off. The horse was going slowly at the time, and the evidence shows that she said to the driver of the horse, "Ride slow." On the redirect examination, she testified that "I told him to slow up when we were approaching the car track, because I knew we were approaching a car track. I said to him, 'Mr. Huber, ride slow.'" It appears that while driving slowly the vehicle was struck by the car of the defendant, and the plaintiff was thrown out, and more or less seriously injured.

On the trial the court charged that:

"The same rule of negligence applies to her as applies to the defendant. In other words, you are to say whether she, or the party with whom she was

driving, in charge of the vehicle, was guilty of contributory negligence in approaching the track so near as to be struck by the car when it was coming at that speed. * * * Whether she is guilty of contributory negligence is a question of fact for you to determine. Did she or did Huber exercise ordinary care to avoid this collision? * * * If you determine this proposition against the plaintiff, then, of course, the defendant is entitled to a verdict. But, on the other hand, if you determine the first proposition that there was negligence of the defendant's motorman, and freedom from negligence on the part of the plaintiff and on the part of Mr. Huber, then it will become necessary for you to determine the third question in this case, and that is the question of damages."

In response to the request of the plaintiff's counsel to charge "that the plaintiff cannot be charged with any negligence that she was not personally guilty of," the trial court replied: "I charge that she is chargeable with the negligence either of herself or Huber, who was in charge of the team, as she undertook to direct his movements." Plaintiff's counsel: "If she did undertake to direct his movements." To this the court replied: "I charge that, as a matter of fact, she did so, because she testified that she did."

This is clearly reversible error. The plaintiff, in an action for damages due to negligence, cannot be held responsible for the negligence of third parties. It is true, of course, that there are cases in which the negligence of third parties has been allowed to defeat an action of this character, but it was only under such circumstances that the negligent act became in fact the negligence of the plaintiff, and it does not change the rule of law. The negligence of the driver, in so far as he was independent of the control of the plaintiff, was separate and distinct from the negligence of the plaintiff; and the mere fact that she was on her guard, and uttered words of caution to the driver, did not constitute such direction and control of his actions as the law contemplates, to charge her with the responsibility for his negligence, but was intended, rather, to show that she was exercising that degree of caution and prudence which the law makes her duty in approaching a dangerous railroad crossing. "It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver," say the court in the case of Brickell v. Railroad Co., 120 N. Y., at page 293, 24 N. E., at page 450, "to learn of danger, and avoid it if practicable." In this case the court went further than in any other which we find in the books in holding the plaintiff responsible for the negligence of the driver, and it is the only one which seems to give any sanction to the rule as laid down by the trial court. It is therefore worth while to consider it somewhat in detail. The plaintiff had hired the driver to take him to a railroad station some distance away, and in reaching which it was necessary to cross the tracks of the defendant. They were riding in a covered buggy. It was snowing, and both knew of the danger. In spite of these conditions, calling for an extra degree of care, the horse was driven upon the track, and the accident complained of resulted. Commenting upon this condition of affairs, and recognizing the fact that the relation of master and servant existed in a certain degree by reason of the fact that the driver was in the employ of the plaintiff, the court say:

"The rule that the driver's negligence may not be imputed to the plaintiff should have no application to this case. Such rule is only applicable to cases

where the relation of master and servant or principal and agent does not exist, or where the passenger is seated away from the driver, or is separated from the driver by an inclosure, and is without opportunity to discover danger and to inform the driver of it."

If the relation of master and servant or principal and agent does not exist, then the fact that the plaintiff may occupy the same seat with the driver does not charge him with responsibility for the conduct of the horses.    If we keep this in mind, we shall find no difficulty in distinguishing the Brickell Case from the one at bar.    Continuing, the court say:

"The plaintiff was sitting upon the seat with the driver, with the same knowledge of the road, the crossing, and environments, and with, at least, the same, if not better, opportunity of discovering dangers, than the driver possessed, and without any embarrassment in communicating them to him."

The plaintiff in this case was the master.    He had hired the driver to carry him, and he could not close his eyes to danger, and avoid the legal responsibility for his neglect of ordinary precautions.

The law, as applied to the case at bar, is clearly stated in the case of Hoag v. Railroad Co., 111 N. Y. 199, 18 N. E. 648, where the administratrix of a woman killed while riding with her husband brought an action for damages due to the negligence of the defendant.    Both the husband and the wife were killed, and the plaintiff was nonsuited because of the alleged negligence of the husband. This was held error, and in discussing the case the court say:

"If we assume, for the purposes of the argument, the negligence of the husband, who was driving, yet his negligence cannot be imputed to the wife. Platz v. City of Cohoes, 26 Hun, 391, affirmed 89 N. Y. 219; Robinson v. Railroad Co., 66 N. Y. 11.    The question presented as to her is whether there was any evidence tending to show that she was free from negligence contributing to the injury.    The facts and circumstances proven admit of two conflicting inferences, one or the other of which must be true.    The deceased and her husband either saw the passenger train approaching as they neared the track or they did not.    If they did not see it, or, at least, the deceased did not see it, she was negligent, for she was bound to look and listen, and the facts show that, if she had looked, she could have seen, and would have seen, the approaching train.    She had no right, because her husband was driving, to omit some reasonable and prudent effort to see for herself that the crossing was safe.    But the strong probability is that she did see the train, and her husband did also, and that he, for some reason, undertook to cross in its front, miscalculating, perhaps, its distance and speed and his opportunity.    She was not bound to suspect that purpose until she saw it being executed.    Before that she might reasonably expect him to stop and wait.    When she saw that he was about to make the attempt, they must have been very close to the track.    She was not bound to jump from the wagon.    That might seem to her as dangerous as to sit still.    She could not be required to seize the reins or interfere with the driver.    That is almost always dangerous and imprudent.    She might have begged her husband to stop, and we do not know that she did not; but if she did not, and sat silent, it does not follow, as matter of law, that she was negligent.    Her husband seems to have been ordinarily a careful man.    Having his wife with him, one would think, would make him more so.    He stopped twice before he crossed the freight tracks.    She was hardly blamable, when both saw the coming train, for thinking and expecting that he would stop again.    When she saw that, instead of stopping, he meant to cross, she should have spoken, perhaps; but she may have been so near the engine as to have scarcely had time, or so paralyzed with fright at the impending danger as to have lost her judgment and prudence for the moment.    The degree of care to be exercised

varies with circumstances and emergencies. If the deceased was silent, it does not follow, as matter of law, that she was negligent."

In the case at bar the plaintiff did look, and saw the approaching car. She spoke to her companion, using the words, "Ride slow." These words were not words of command, directing that the driver should drive slowly upon the track where a car was rapidly approaching, but were words of caution. She had no control over the driver. He owed her no duty of obedience, and she was not called upon to take the reins, nor is it probable that the driver would have submitted to any such interference with his own horse. The law contemplates that a person, to be chargeable with the conduct of another, must have the power or authority to control, and such power or authority cannot be assumed in the case of a woman who accepts an invitation to ride with a gentleman in his own vehicle, where he assumes to act as driver and to control the horse. As was said in the case of Robinson v. Railroad Co., 66 N. Y. 11:

"The plaintiff had no control of the vehicle, nor of the driver in its management. It is not claimed but that Conlon was an able-bodied, competent person to manage the establishment, nor that he was intoxicated, or in any way unfit to have charge of it. Upon what principle is it that his negligence is imputable to the plaintiff? It is conceded that, if by his negligence he had injured a third person, she would not be liable. She was not responsible for his acts, and had no right and no power to control them. * * * I am unable to find any legal principle upon which to impute to the plaintiff the negligence of the driver. The whole argument on behalf of the appellant on this point is contained in the following paragraph from the brief of its counsel: 'So, if the plaintiff had proceeded on this journey upon the invitation of Conlon for the like purpose, she having voluntarily intrusted her safety to his care and prudence, and thus exposed herself to the risk of injury arising from his negligence or want of skill, she should be precluded from recovering, if he thereby contributed to her injury.' If this argument is sound, why should it not apply in all cases to public conveyances as well as private? The acceptance of an invitation to ride creates no more responsibility for the acts of the driver than the riding in a stagecoach, or even a train of cars, providing there was no negligence on account of the character or condition of the driver, or the safety of the vehicle, or otherwise. It is no excuse for the negligence of the defendant that another person's negligence contributed to the injury, for whose acts the plaintiff was not responsible. The rule of contributory negligence is very strict in this state, and should not be extended, nor should the rule of imputable negligence be extended to new cases, where the reason for its adoption is not apparent."

"Between one who has no voice or control in the management of an enterprise, and no right to share in any control [say the court in the case of Kessler v. Railroad Co., 3 App. Div. 426, 38 N. Y. Supp. 801], and those who are actually conducting the enterprise, it is plain that no relation of principal and agent exists or can exist. The sole ground of imputed liability, whether of contributory negligence or of injuries done others by negligence, is that the party has some right, voice, or control in the conduct of the enterprise. We can see no distinction in principle between one riding in a vehicle upon the invitation and as the guest of one person or of a dozen. If he is a guest, the question of liability is the same in either case. The plaintiff was, therefore, responsible only for his own negligence."

To the same effect is the opinion of the court in the case of Strauss v. Railway Co., 6 App. Div. 264, 39 N. Y. Supp. 998. Pauline Moses and her two daughters accepted an invitation from William Pfeiffer to ride in his carriage. Pfeiffer drove his horse upon Bridge street, when he was informed by the deceased that a car was ap-

proaching. He drove along the street, clear from the tracks, but his horse became uneasy, and finally stopped and began backing towards the track. Pfeiffer used his whip, and tried to persuade his horse to move forward, but without avail, and the car of the defendant struck the vehicle in which the deceased was sitting with such force as to completely demolish it, with the result that the deceased sustained injuries resulting in her death. The court in passing upon the case say:

"So far as the question of contributory negligence was concerned, if plaintiff's intestate was chargeable with the negligence of Pfeiffer, there was evidence presented which would have supported a finding exonerating him therefrom. But his negligence was in no wise chargeable to deceased. She was there by his invitation, as his guest, and had no control or direction over the management of the vehicle. Consequently she was not chargeable with his negligence."

In this case, as in the case at bar, the woman who was riding at the invitation of another person saw and called the driver's attention to the approaching car, but it did not occur to the learned court that she thereby attempted to give direction as to the management of the horse, or that she in any degree assumed control of the establishment, thus becoming responsible for the neglect of the driver. In the case at bar it is true the words used by the plaintiff were, "Ride slow," but it is evident from her testimony that she was not very familiar with the English language, and they are to be understood merely as words to admonish the driver to drive carefully. But, if the language is accepted literally, it does not justify the conclusion reached by the learned trial court. The evidence is that they were 25 feet from the tracks when she uttered these words. If she asked him to drive slowly at that time, she was justified in assuming that, having continued to drive with the same deliberation which he was using at the time of her admonition, he would stop at a proper time to avoid the collision. She had called his attention to the approaching car, had asked him (with no power or authority to compel obedience) to "ride slow," and she was not obliged to assume that he would fail to exercise reasonable care, or to take upon herself the management of the establishment belonging to the gentleman who had asked her to ride.

The same doctrine is held in the cases of Dyer v. Railway Co., 71 N. Y. 228, Phillips v. Railroad Co., 127 N. Y. 657, 27 N. E. 978, and Masterson v. Railroad Co., 84 N. Y. 247. In the latter case (at page 253) the court say:

"And I feel bound to say that the facts do not show a condition of things that would warrant the jury in saying that the plaintiff cannot recover, even if they should find Atfield was negligent. They were not engaged in any joint employment; and, whatever doubts may have existed as to what the law was years ago, it seems now to be settled that, in a case of this character, assuming that Atfield was a competent driver and sober man, and no reason which deceased could discover why he should refuse to ride with him, I do not think that, although there might have been carelessness on the part of Atfield in driving, that would defeat a recovery, unless you should consider there was a willful act upon the part of the driver, and the death was caused by his wrongful and willful act."

In the recent case of Meenagh v. Buckmaster, 26 App. Div. 451, 50 N. Y. Supp. 85, the court had under consideration the charge of the trial court that:

"If Kernahan was intoxicated or his manner of driving was so heedless or careless as that Meenagh, in the exercise of ordinary care, would have perceived it, and he failed to do so, and to remonstrate with Kernahan, he was chargeable with contributory negligence for continuing to ride with him, because, if it occurred to Meenagh's mind that the driving was dangerous and careless, and he assented to it, then he was a party to it. As to the plaintiff's own negligence, a passenger has no right, because some one else is driving, to omit some reasonable and prudent effort to see for himself the danger, if there was a danger, and to avoid it."

Commenting on this charge, the court say:

"We think this charge is correct as applied to the facts of this case. We must assume that, in the exercise of reasonable care and prudence, the plaintiff could have observed the obstruction. Under such circumstances, he ought not to remain passive. The situation required upon his part some affirmative act, either of remonstrance to the driver or by way of attracting his attention to the obstruction. He could not remain inert, and shelter himself under the claim that he had no control of the horse or the driver."

There is no suggestion here that the plaintiff is liable for the neglect of the driver, but that the plaintiff was himself negligent in riding with a man who was obviously reckless in his driving, without making any effort to prevent such reckless driving, or to call the driver's attention to the danger by which he was confronted. In fact, there are no cases which impute to the guest liability for the negligence of the driver, and it is only where the passenger, riding at the invitation of another, has neglected some duty with which he was charged, in exercising that reasonable care which the law demands at all times, that the courts have refused him relief when he has sustained injury through the negligence of others. See, also, Hobson v. Milk Co., 25 App. Div. 111, 49 N. Y. Supp. 209, and cases cited.

The rule is different where the driver is the servant or agent of the person injured, or where both parties are engaged in a common employment (Smith v. Railroad Co., 4 App. Div. 493, 38 N. Y. Supp. 666, and 39 N. Y. Supp. 1119; Donnelly v. Railroad Co., 109 N. Y. 16, 15 N. E. 733); but this has no bearing upon the case at bar, and it is not necessary to consider the question further.

The judgment and order are reversed, and a new trial is granted; costs to abide the result. All concur.