dividually the persons who took under the residuary clause. The devise to them is just as specific as the devise to Schuyler Hamilton, Jr., and must necessarily be governed by the same rules of construction. We think, therefore, that the learned referee erred in holding that this annuity was a charge upon such remainder.

The judgment should be modified in accordance with the views expressed in this opinion, with costs to all parties appearing upon this appeal to be paid out of the estate.

BARRETT, RUMSEY, and PATTERSON, JJ., concur.

O'BRIEN, J. I concur upon the second question, as to the annuity to Beatrice Ray; but dissent on the first question, as to the right of Alexandra S. Hamilton to participate in the Broadway and Spring street property, for the reasons given by the learned referee.

---

(36 App. Div. 191.)

KLEINER v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. January 20, 1899.)

1. IMPUTED NEGLIGENCE—DRIVER OF VEHICLE—COLLISIONS.
   The contributory negligence of a driver of a carriage which occasioned a collision with a street car cannot be imputed to a person in the carriage, where the driver was not subject to his direction.

2. APPEAL—HARMLESS ERROR—INSTRUCTIONS.
   A mistaken statement of the court that it had charged that plaintiff might recover if the collision with defendant's street car occurred as described by plaintiff's witnesses is harmless, where such charge would have been correct.

3. SPECIAL DAMAGES—PLEADING AND PROOF.
   Where plaintiff alleged that a nervous shock was occasioned by injuries. evidence that she suffered from curvature of the spine is not inadmissible as constituting special damages not pleaded, if there is evidence that such curvature was caused by the nervous shock.

Appeal from trial term, New York county.

Action by Margaret Kleiner against the Third Avenue Railroad Company. From a judgment for plaintiff and an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Clifford Seasongood, for appellant.
J. Newton Williams, for respondent.

PATTERSON, J. From a judgment entered on a verdict in favor of the plaintiff in an accident case, and from an order denying a motion for a new trial, the defendant appeals. The injuries sustained by the plaintiff were caused by a collision of one of the defendant's cars with a carriage in which she was riding in company with three other women. The carriage was drawn by two horses, was proceeding along Twenty-Sixth street, and was in the act of crossing the westerly track of the defendant's road on Third avenue when the collision occurred. The negligence attributed to the defendant consists in the failure of the

motorman operating the car, from inattention, to stop in time to avoid the collision; the plaintiff's claim being that the carriage was observable to the motorman for a sufficient distance to have enabled him to prevent the accident, it being stated by some of the witnesses that his car was moving at very great speed, and that he was looking to the left, after a car that had passed on the other track. Upon the issue concerning the negligence of the defendant's servant there was a serious conflict of testimony. The witnesses called by the plaintiff place the carriage in which the plaintiff was riding at various distances from the car when that car was first noticed by them. Some state it was near the corner of Twenty-Seventh street and Third avenue, nearly a block away; others bring it to within a distance of about 50 feet; but these discrepancies are unimportant, as the least distance testified to in this connection was about 50 feet, and it is not suggested that the car could not have been stopped within that distance. There is also a difference in the statements of witnesses concerning the rate of speed at which the car was traveling, but they all agree that it was going very fast. The driver and some of the plaintiff's witnesses say that the carriage was crossing the track at a slow walk; others say that the driver whipped up his horses when they reached the westerly track; but the effect of the testimony of every one of the plaintiff's witnesses who saw and testified to all the details of the occurrence is that the motorman could have avoided the collision had he been attentive to his duty. On behalf of the defendant, there was testimony to the effect that the speed of the car was checked at about the middle of the block between Twenty-Sixth and Twenty-Seventh streets; that there was a large grocery truck covered with canvas on the easterly track, which obstructed the view of the motorman, and he swears that when he first saw the carriage it was distant, obliquely from him on the east side, some 15 feet, and that he could not stop his car within that distance; that his car struck the carriage, which he describes as having been drawn by one horse, which last statement is manifestly wrong. Another witness for the defendant, who was riding on the truck, testified that he first saw the carriage 15 feet from the car, and that the horses were approaching at a trot.

This is not a case in which a question of contributory negligence can arise. The plaintiff was riding inside the carriage, the driver of which was not under her control nor subject to her direction, and therefore his act, even if he were imprudent, cannot in any way be attributed to her. The issue as to the negligence of the defendant's servant is, therefore, the only one to be considered on the principal question of liability; and the testimony of the plaintiff's witnesses abundantly establish, prima facie, the affirmative of that issue. The trial judge in his main charge left that issue, upon the conflicting testimony, to the jury, under correct instructions. After they were given, various requests to give further instructions were made by the respective parties. The defendant's counsel asked the court to charge that, if the jury believed that the accident happened in the manner described by the defendant's witnesses, their verdict must be for the defendant. The court so charged; whereupon the counsel for the plaintiff said, "I ask your honor to charge, if the jury believe that the accident occurred ac-

cording to the manner described by the plaintiff's witnesses, then the
plaintiff is entitled to recover;" to which the court replied, "I have
charged that; I charge it again;" and the defendant excepted.    It is
apparent that the trial judge could not have understood the exact im-
port of this entirely unnecessary request, for he replied that he had
charged it, which is a mistake, for he had not given any such instruction.
Evidently he had in mind what he previously stated to the jury respect-
ing the preponderance of proof, and he doubtless meant that, if by the
preponderance of testimony the plaintiff had established that the acci-
dent occurred in the manner testified to by the plaintiff's witnesses,
then the plaintiff was entitled to recover.    But, literally read, this
request means something more than that.    Fortunately for the plain-
tiff, it was not incorrect; for the testimony of all of the plaintiff's
witnesses who saw the occurrence from the time at which the car was
first observed until its contact with the carriage is susceptible of no
other construction than that the accident happened in such manner as
to make the motorman chargeable with negligence.

The record contains a great many exceptions taken by the defendant,
none of which require consideration, except those relating to the ad-
mission of evidence as to the extent, character, and consequences of
the injuries sustained by the plaintiff, and the instructions of the trial
judge given to the jury in connection therewith.    It was shown that
the plaintiff before the accident was in good health, and that after-
wards, and as a consequence of her injuries, she suffered, among other
effects, from curvature of the spine, chronic meningitis, neurasthenia,
and heart trouble.    The testimony as to these several matters was
objected to when offered, the objection being that they constituted
special damage not pleaded, and hence not provable.    In actions to
recover damages for personal injuries, a plaintiff proving negligence
and injury may recover under a general allegation of damage for such
consequences as necessarily and immediately follow from the injury,
but for consequences which do not necessarily and immediately result
from such injury he cannot recover unless the special damage is alleged
in his complaint.    Gumb v. Railway Co., 114 N. Y. 411, 21 N. E. 993;
Uransky v. Railroad Co., 118 N. Y. 308, 23 N. E. 451; Hergert v. Rail-
way Co., 25 App. Div. 218, 49 N. Y. Supp. 307.    The rule was not vio-
lated in this case.    The testimony was properly admitted, and the
instructions of the judge in connection therewith were properly given.
The allegation of the complaint, after the statement of the occurrence,
is as follows, viz. "thereby injuring the plaintiff, and knocking her
against said coach by the force of said collision, and causing her to be
thrown from said carriage to the pavement of said street, striking on
her head and side, whereby the plaintiff received severe and painful con-
tusions of her head and body and arms, and lacerated her scalp, and
whereby she sustained severe nervous shock and concussion of the
brain, and injured her eyesight, and she was for a time rendered un-
conscious, and she thereby sustained permanent injuries, and she was
injured for life."    When upon the trial the inquiry was first opened
respecting the alleged special damage, the trial judge in effect construed
the complaint, and held that testimony concerning the curvature of
the spine (and subsequently as to the other matters claimed to be in

the nature of special damage) was only admissible under the allegation relating to nervous shock.    Being admitted under that allegation, the question is as to there being testimony to show that those consequences resulted directly or immediately from the injuries the plaintiff sustained, and as the necessary result thereof; the word "necessary" not signifying inevitable, but meaning being connected naturally and inseparably with and as a consequence of the nervous shock.    The evidence given was of the character required.    The neurosis, meningitis, neurasthenia, curvature of the spine, and heart trouble were testified to as being directly connected with and resultant from the nervous shock; and the trial judge did not misapprehend the tendency of that testimony in his rulings upon the evidence and in his instruction to the jury.    There is also testimony of a "reasonable certainty" of the permanency of the consequences of the injuries sustained.

The judgment and order appealed from must be affirmed, with costs. All concur.