ANTONIO VENUTA, Appellant, v. NEW YORK, WESTCHESTER AND CONNECTICUT TRACTION COMPANY and GEORGE UNDERHILL, Respondents.

*Negligence — a charge that a person traveling on a highway has no right to be on a street railway track when a car comes up is improper — when the error is not cured by other portions of the charge.*

In an action to recover damages for personal injuries sustained by the plaintiff, in consequence of a collision between one of the defendant's street cars and a wagon upon which the plaintiff was riding, it is improper for the court to charge that a person traveling on a highway has no right to be on a street

railway track when a car comes up and no right whatever to make a car slow down.

This error in the charge is not cured by other portions of the charge in which the court says, to put it more precisely, the law requires them to use reasonable prudence to be off when the car comes up and he has a right to be there, but with that right goes the duty to be vigilant to.be off before the car comes up.

WOODWARD, J., dissented.

APPEAL by the plaintiff, Antonio Venuta, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Westchester on the 27th day of January, 1903, upon the verdict of a jury, and also from an order entered in said clerk's office on the 15th day of December, 1902, denying the plaintiff's motion for a new trial made upon the minutes.

*Odell D. Tompkins,* for the appellant.

*Charles W. Church, Jr.,* for the respondents.

WILLARD BARTLETT, J.:

We are of opinion that this judgment must be reversed on account of error in the charge.

The suit grows out of a collision between one of the cars of the New York, Westchester and Connecticut Traction Company and a wagon upon which the plaintiff was riding. Speaking of the relative rights and duties of the motorman of the car and the driver of the wagon, the learned trial judge told the jury, among other things: "It is the duty of the motorman, of course, to carry his passengers with reasonable expedition. That is what these companies are for. Their business is not to lally-gag from here to Mount Vernon when you get in their cars, but to carry you with reasonable expedition. * * * The car has the right of way over the track. The law gives it the right of way. Nobody has the right to be there when the car comes up. Anybody there owes it a duty to be off before the car comes up, or to put it more precisely, the law requires them to use reasonable prudence to be off when the car comes up. You have not the right even to make a car slow up. You have no such right whatever. You have not the right to get on a railroad track and slow a car up. It is your duty to use reasonable care to be off by the time the car comes up, because the car is carrying the public. There

may be fifty people in the car, or thirty, or twenty who are not to be stopped by one person who gets on the track.   On the contrary, that one person's duty is to use reasonable care to be off.   He has a right to be there, but with that right goes the duty to be vigilant to be off before the car comes up."

Exception was duly taken to this portion of the charge.   It was certainly error to instruct the jury generally to the effect that a person on the highway has no right to be on a street railway track when a car comes up, and no right whatever to make a car slow up.   In every case where a person on a street is run over by the wheels of a street car, he must be on the track when the car reaches him ; but if it is the law that he has no right to be there, as charged by the learned court in this case, there could never be any recovery on the part of the plaintiff in an action growing out of an accident of that character.   The only ground on which this error can be disregarded is that the trial judge corrected it when he said that " to put it more precisely, the law requires them to use reasonable prudence to be off when the car comes up ; " or when he said, further : " He has a right to be there, but with that right goes the duty to be vigilant to be off before the car comes up."   But in neither of these qualifications is there anything which distinctly negatives the idea previously conveyed to the jury that a person in the way of a car cannot rightfully be at the point of collision when the car reaches him.   There is no disaffirmance of that proposition in the statement that a person so situated must be vigilant to get off the track before the car comes up to him.   Of course he must, if he has no right to be there at all at the time when he is struck.   A charge to a jury is intended to tell laymen what are the rules of law applicable to the determination of the case which they are called upon to decide.   The jurymen in this case were instructed in the most positive manner as matter of law that a traveler on the highway who claimed to have been injured by collision with a street railroad car had no right to be at the spot where the collision occurred at the time when it occurred.   This instruction was emphasized by reference to the employment of the car in the service of the community as a carrier of twenty, thirty or perhaps fifty passengers, whose convenience seemed to impress the court as in some way entitled to more consideration than that of other travelers on the highway.   We cannot

doubt that this portion of the charge was heeded by the jury, and we cannot find that it was subsequently withdrawn or qualified so as to cure the error.

The judgment must, therefore, be reversed.

GOODRICH, P. J., HIRSCHBERG and JENKS, JJ., concurred; WOODWARD, J., read for affirmance.

WOODWARD, J. (dissenting):

The plaintiff seeks to recover damages for personal injuries, conceded to have been sustained by him in a collision between a wagon driven by the son of the defendant George Underhill, and a car operated by the defendant railroad company's servants, the plaintiff being an employe of the defendant Underhill, and engaged in assisting in delivering a load of straw in the city of Mount Vernon. The straw had been delivered, and the plaintiff and Benjamin F. Underhill were on their way home, Underhill driving the team and the plaintiff sitting on the edge of the hayrack, with his feet overhanging one of the rails of the defendant railroad company. The roadway was macadamized, was thirty feet wide, with a single-track street surface railroad in the middle. It was after dark, and at the point of the accident the roadway was overhung with trees, so that one of the witnesses described it as being like running through a tunnel. Near the place where the accident occurred was an electric light. The car of the defendant railroad company was running toward Mount Vernon at the rate of six or eight miles an hour, and the team of the defendant Underhill was traveling in the opposite direction, apparently upon a trot, and all of the witnesses seem to substantially agree that the two vehicles did not come within view of each other, owing to the intervening electric light, until they were within twenty-five or thirty feet of the point of contact. It does not appear what, if anything, was done by the driver of the wagon, but the evidence is practically undisputed that upon the wagon coming within the scope of vision of the motorman upon the car, he acted promptly in applying his brakes and reversing his power, and doing all that it was possible to do under the circumstances to prevent the accident. He testifies that he was ringing his gong when he entered the dark place under the trees, and while there were several witnesses who testified that

they did not hear the gong, there were none of them who disputed the fact directly, and we are of opinion that the jury might, very properly, have found that the defendant railroad company was not guilty of neglect of any duty which it owed to the plaintiff.' The place where the accident occurred was out in the country, and the rate of speed and the effort which the defendant's motorman made to stop the car and to warn persons of his approach were all consistent with that reasonable degree of care which the law exacts. This is the view which the jury might have taken of the evidence, and the verdict in favor of the defendant would seem to indicate that it reached this result.

The appellant urges that this was not an inevitable accident; that it might have been avoided by the exercise of greater care on the part of both of the defendants, and suggests that if Underhill had driven farther over upon the side of the street the collision with the outer edge of the hayrack would not have resulted, and it was this contact with the hayrack which is alleged to have caused the injury complained of by the plaintiff. But the question is never presented in this kind of actions whether the accident, in the light of what is known afterwards, might have been prevented by the exercise of a higher degree of care; it is whether the parties, under all of the circumstances, exercised that reasonable degree of care which reasonably careful and prudent men would, or should, have used under the conditions then and there existing, and it may not be said, as a matter of law, that Underhill was negligent in driving upon the highway, outside of the tracks of the defendant railroad company, in such a manner that six to twelve inches of his hayrack overhung the space which would be occupied by a car in passing. Under ordinary circumstances he would be able to see the approaching car in time to get out of the way, and it might be highly imprudent for him, in the darkness, to drive at the extreme outside of the beaten track, where his overhanging hayrack might come in contact with trees, hitching posts or other obstructions. The jury, from the evidence, which was exceedingly vague as to the exact manner in which the plaintiff sustained his injuries, as well as to the conduct of the defendant Underhill, might have reached the conclusion that the latter was exercising that degree of care which the circumstances demanded. In view of the fact that

the plaintiff was sitting upon the edge of the hayrack, overhanging the track, while Underhill was in the middle of the wagon driving, and might be unable to determine accurately his exact position with reference to the car tracks, the jury might have believed that the plaintiff owed the duty of using some measure of care in riding, where he knew of the situation and the obvious danger, without calling attention to the facts. It does not appear that the plaintiff did anything whatever, though he knew of the existence of the railroad track, and must have known that in the event of a car approaching he would be in an exposed and dangerous place. There is no evidence that he suggested that the wagon was too near to the track or that he took any pains to keep watch for an approaching car, and while it is probably true that he would not be responsible for the negligence of the driver, he is answerable for his own negligence, and this negligence might consist in riding in an exposed position upon the wagon, in a dark night, without making any effort to insure his own safety. (See *Bergold* v. *Nassau Electric R. R. Co.*, 30 App. Div. 438, 446, and authorities there cited.) The rule is invariable that the plaintiff must show that he has been free from negligence producing the accident; and while there are some cases in which this inference arises from the circumstances, without direct proof of the negative, the case is never complete until facts are shown from which the inference may be drawn that the plaintiff has not contributed to the accident by his own failure to exercise reasonable care. A passenger has no right, because some one else is driving, to omit some reasonable and prudent effort to see for himself the danger, if there was a danger, and avoid it. (*Meenagh* v. *Buckmaster*, 26 App. Div. 451.) It might be, if the evidence was clear that the position of the plaintiff upon the edge of the hayrack overhanging the track did not contribute to his injury, there would be some question of the propriety of submitting to the jury whether this constituted contributory negligence, but the testimony does not disclose how the injury resulted; whether the plaintiff was run over by the car wheels or was injured by being thrown over with the wagon and crushed under it. The complaint alleges that he was injured by the car wheels. Upon the trial the defendants admitted the injuries, due to the accident, but refused to concede that the plaintiff was run over by the car, and the plaintiff offered no evidence to support the alle-

gation of the complaint, so that the whole matter is left in doubt. But the question is not whether it was contributory negligence to sit in this exposed position, but whether the evidence shows that the plaintiff exercised a reasonable degree of care under all of the circumstances, and it was clearly proper for the learned trial court to call attention to the conceded position of the plaintiff, and to permit the jury to view this as one of the circumstances bearing upon the question. The jury has found a general verdict in favor of both of the defendants; the evidence, it seems to us, fairly justifies a finding that neither of the defendants were guilty of neglecting to use that ordinary degree of care which is required by the law, and that the plaintiff has failed to establish that he has been free from negligence contributing to the accident. The only questions remaining are whether the learned trial court erred in charging the jury.

There can be no doubt, if it were true that the learned court had charged that the defendant railroad company had the exclusive right of way over its tracks, that there would have to be a reversal of this judgment. The difficulty with the plaintiff's proposition is that a fair reading of the charge does not convey this idea. As I read the charge it leaves clearly the impression that the defendant railroad company has a paramount right to the use of its tracks, and this is, beyond all question, the law, established by so many authorities that to cite them were a needless concession to drudgery. The language of the charge, upon this point, is as follows: "The car has the right of way over the track. The law gives it the right of way. Nobody has the right to be there when the car comes up. Anybody there owes it a duty to be off before the car comes up, *or to put it more precisely, the law requires them to use reasonable prudence to be off when the car comes up.* You have not the right even to make a car slow up. You have no such right whatever. You have not the right to get on a railroad track and slow a car up. It is your duty to use reasonable care to be off by the time the car comes up, because the car is carrying the public. There may be fifty people in the car, or thirty, or twenty, who are not to be stopped by one person who gets on the track. On the contrary, that one person's duty is to use reasonable care to be off. *He has a right to be there, but with that right goes the duty to be vigilant to be off before the car comes up.* I only explain this to show the relative

duty and position of the motorman. It is not a one-sided thing. He has a right to expect people will use reasonable prudence also. He is not the only one required to be reasonably prudent. People may be on the track, but it is their duty to be vigilant and careful to be away from it by the time a car comes up. That is not always possible. If you never got on a track in Broadway until you could get on there without coming near a car, you might spend your day going a block, while out in the country, where there is nothing, you can get on and off at will; there is no trouble at all keeping away. So that is relative again. What would be carelessness on a country road may not be carelessness in Broadway." Clearly the jury could not have understood that the right of the defendant railroad company upon its tracks was exclusive ; that it had a right to run its cars over the same regardless of the presence of others. Taking the language in its ordinary sense the charge in effect told the jury that the railroad company had the paramount right to the use of its tracks ; that persons using the highway had a right to be upon the tracks, but that it was their duty to use reasonable care to be out of the way when a car came along, and that this duty of using reasonable care was mutual as between the railroad company in the operation of its cars and others lawfully using the highway. Accepting the rule contended for by the appellant, that "the charge should receive such a construction as ordinary men, not learned in the law, would be apt to place upon it" (*Corn Exchange Bank* v. *American Dock Co.*, 149 N. Y. 174, 182), I am persuaded that the court did not err in this charge, but, on the contrary, took more than the usual care to state the limitations upon the rights of the respective parties.

I think it was proper for the court to submit the question of plaintiff's contributory negligence to the jury, for I have already pointed out that the question is not whether any particular act of the plaintiff constitutes contributory negligence, but whether the evidence shows facts and circumstances which warrant the jury in finding that he has been free from negligence contributing to the accident. As I read the evidence in this case it shows the plaintiff sitting upon the outside edge of a hayrack, overhanging the track of the street surface railroad, on a dark night, and that is all we are told about him, except that there was a collision between the hay-

rack and the car of the defendant railroad company, and that, in some manner unexplained, the plaintiff lost a leg, and the plaintiff alleges in his complaint, although he fails to prove, that his injuries were caused by being run over by the car. Does this evidence show a case where no question of contributory negligence can arise, as in the case of *Kleiner* v. *Third Avenue R. R. Co.* (36 App. Div. 191)? I think not, and I am persuaded that it was for the jury to determine whether the plaintiff had sustained the burden of establishing that he was free from contributory negligence under the facts stated. In the *Kleiner* case a woman was sitting inside of a carriage with three other ladies, having no control over the driver, and it was very properly held that the negligence of the driver could not be imputed to her, but it did not absolve her from establishing that she had been free from contributory negligence, although this was an inference drawn from the fact that she was so placed as not to be in a position, by her own conduct, to contribute to the accident. So I have assumed in this case that the negligence of Underhill could not be attributed to the plaintiff, but the jury had a right to find, from the evidence, that the plaintiff had failed to exercise that reasonable degree of care which the circumstances in which he was placed demanded, or, at least, that he had not established by the evidence that he had been free from such negligence.

The judgment and order appealed from should be affirmed, with costs.

Judgment and order reversed and new trial granted, costs to abide the event.