# Borough of Carlisle *versus* Brisbane.

1. The remedy of a passenger, injured by the joint negligence of his carrier and another is against the common carrier only.

2. In an action by a passenger, against a municipality to recover damages for injuries sustained by him, through the negligence of the officers of the municipality, in obstructing the highway without giving warning of the same, the contributory negligence of a voluntary carrier without compensation cannot be imputed to him.

3. Where the municipal authorities in the repair of their streets place an obstruction on them, it is their duty to give some appropriate warning of the same.

4. Lockhart v. Lichtenthaler, 10 Wr., 151, distinguished.

May 6th, 1886. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Cumberland county:* Of July Term 1886, No. 6.

[Borough of Carlisle v. Brisbane.]

This was an action of trespass on the case brought by John F. Brisbane against the Borough of Carlisle to recover damages for injuries sustained by reason of the alleged negligence of the municipal authorities in obstructing their streets without giving warning of the same. Plea, not guilty.

On the trial, before SADLER, P. J., the following facts appeared:

During the fall and winter of 1884 the borough of Carlisle was macadamizing that part of North street which lies outside of the built up portion of the borough, beginning at the eastern boundary, the Poor House road, and running west to the Garrison lane, wholly "in the country." The street or road is sixty feet wide. The custom of the borough is and always has been to macadamize first one half the width for the whole length, then the other, keeping one half, thirty feet in width of the clay road, open for travel. This was done on North street. The end at the Poor House road was levelled off for a distance of forty feet westward, in order that there might be a free and safe access to the open and well beaten clay road.

On Sunday, the 28th of December, 1884, the plaintiff, a resident of Philadelphia, with Mr. Cornman, of Carlisle, visited the poor house, and from there in the afternoon or evening drove into town in a sleigh. They turned into North street, and their sleigh was upset fifty or sixty feet from the Poor House road. The night was dark and the ground was covered with snow. There was nothing to warn them of the obstruction which caused them to upset. This obstruction proved to be the bank of stone, about fourteen inches high, forming the macadamized portion of the road. The plaintiff was thrown out of the sleigh with such violence as to break his leg.

Mr. Cornman was the owner of the horse and sleigh, and the driver at the time of the accident.

He testifies that he turned from the Poor House road, and drove "for the centre of the street," which threw one runner on the embankment about fourteen inches high, made by the stones, and the other down on the clay road.

The borough offered to show that he knew of the repairs going on, was familiar with the manner of making such repairs in this borough; that while the work on this street was going on, and after that portion on which he upset was made, he frequently passed and repassed on the clay road, and knew of the obstructions, if any, and of the safe way provided by the borough for travel.

The Court rejected this offer because Mr. Cornman was "not a common carrier," and therefore plaintiff could not be affected by his negligence. (First assignment of error.)

3 AMERMAN—35

[Borough of Carlisle v. Brisbane.]

In rebuttal the Court permitted the plaintiff to prove that before the beginning of the repairs the centre of the street was the part usually travelled, and the "beaten track" was there.

It was objected to this offer that plaintiff had admitted that he knew nothing of the road prior to the accident, and that the knowledge of its former condition could only apply to Mr. Cornman, the driver. (Second assignment of error.)

After the admission of the evidence, defendants renewed their offer to show Mr. Cornman's actual knowledge of the condition of the road. This was again rejected. (Third assignment of error.)

The defendant presented, *inter alia*, the following points:

1. If the jury believe that the borough was repairing North street, and in doing so it followed the usual and ordinary plan of making such repairs, and that at the junction of North street and the Poor House road they prepared a safe and easy road, and left open a clear space of thirty feet on North street for travel, and that this street was so well marked that no person of ordinary prudence and care could fail to see it by twilight or moonlight, and that the plaintiff could not have been hurt if his horse had been driven with ordinary care, or even if left to himself, then the verdict should be for the defendant.

Answer of the Court: The failure of Mr. Cornman to drive with ordinary care would not, of itself, prevent a recovery by the plaintiff (under the relation which has been shown to have existed between him and the former.) The plaintiff was not the driver, you will remember. The negligence of Mr. Cornman is not to be imputed to the plaintiff, if the latter acted as a reasonably prudent man would have acted under like circumstances. But we instruct you that if the plaintiff by the exercise of ordinary care could have seen that a portion of North street was undergoing repair, and that that portion was not fit for travel, and that at the junction of said street with the Poor House road, a safe and easy road was provided and opened on said street for travel, and this was so well marked that no person in the exercise of ordinary prudence could have failed to see it by twilight or moonlight, then it was his duty, if he had the time after making such observation, to have interfered and changed the direction in which Mr. Cornman was driving his sleigh, or secure its stoppage before the accident occurred; if he failed to do so he was guilty of contributory negligence and could not recover. But you must find whether the testimony submitted to you will justify such a finding. But the fact that the borough followed the usual and ordinary plan adopted by it in making repairs, would not prevent a recovery unless

the plan 'adopted by them was a prudent one, and such as could be used with reasonable safety in regard to those passing over its streets. In other words, the question is, not what was the ordinary plan adopted by the borough, but the question is, if the ordinary plan that was adopted was a safe and prudent one, was it such a manner of making repairs that a person could drive with reasonable safety over the streets during the time that such repairs were being made. (Fourth assignment of error.)

3. If the jury believe that the real cause of the accident to the plaintiff was the negligence and careless driving of the sleigh in which he was seated, then the verdict should be for the defendant.

Answer of the Court: If the accident was solely due to the careless driving of the sleigh in which the plaintiff was seated, he would not be entitled to recover in this action: that is, if it was solely due to the improper driving of the sleigh. But if the accident was the result of negligence on the part of the defendant, that is, the borough, as well as on the part of the driver, and he, the plaintiff, in no way was contributory to such negligence, he may recover; that is, if Mr. Cornman drove this sleigh, and the accident was entirely due to his careless driving, there could be no recovery; but if this accident was partly due to Mr. Cornman's careless driving, and partly due to negligence on part of the borough in not putting up an obstruction, and the plaintiff was in no way negligent, and in no way contributed to it, then he might recover. (Fifth assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows:

But in order to excuse the defendant, if it has been shown that the accident was caused by its negligence, it must appear that the plaintiff, in the present case, was guilty of some negligence on his part. If he was acquainted with the condition of the road and did not endeavor to avoid the danger, negligence would be imputed to him, but the fact that Mr. Cornman, the driver, and whose guest he was, had this knowledge, can not be imputed to him, and would not bar his right of action. He must not be held liable for the negligence of Mr. Cornman unless he could have averted it. If there were any indications which would have arrested the attention of a careful person to the danger in the street, and they were discernible by a person exercising ordinary care, and they were observed, or could have been observed by the plaintiff in the use of ordinary care at the time of day on which he passed over it, and snow on the ground, as you may find from the evidence, or if Brisbane saw the ridge in the centre of the street and

could have prevented the accident by his interposition, either stopping the horse or changing its direction, and made no such effort, and did not act as a reasonably prudent man would have done under the circumstances, he would be guilty of contributory negligence. You will conclude from the evidence what the plaintiff saw and what his opportunities were, to have averted the accident, if any. But a jury are not at liberty to imagine that such was the case. It must appear to them from mouths of witnesses, or other competent evidence, that the plaintiff was guilty of negligence and that it contributed to the accident in some degree, before negligence on his part is entitled to any consideration as a defence to this action. (Tenth assignment of error.)

Verdict for the plaintiff in the sum of $2,500, and thereupon judgment, whereupon the defendant took this writ, filing, *inter alia*, the assignments of error above designated.

*Hepburn, Jr. & Stuart* and *Martin C. Herman*, for plaintiff in error.—In Lockhart *v.* Lichtenthaler, 10 Wr., 151, it was decided—following the line of authorities beginning with Thorogood *v.* Bryan—that where a passenger on a carrier vehicle is injured by a collision resulting from the mutual negligence of those in charge of it, and of another party, the carrier must answer for the injury; and the same rule was followed in P. & R. R. R. Co. *v.* Boyer, 1 Out., 91, where it was further said, that the measure of duty of the carrier company is extraordinary care, that of the non-carrying company, merely ordinary care according to the circumstances. Though as was said in Lockhart *v.* Lichtenthaler, if the negligence of the carrier did not directly contribute to the accident, though there may have been negligence in a general sense, the other party would be answerable if the act of his servants or agents was the proximate cause of the disaster.

The case of Mann *v.* Wieand, 4 W. N. C., 6, is supposed by the counsel on the other side to establish a contrary rule in Pennsylvania as to passengers in a private conveyance, but in that case the negligence of the owner and driver of the wagon, in driving with insufficient harness, was mere negligence in a general sense, and in no sense contributed directly to the accident. The vicious conduct of the defendant's dogs was the only incipient and direct cause, whilst the negligence of the driver incidentally contributed to the disaster after it had been set in motion by the vicious act of the dogs.

The cases of Bennett *v.* N. J. R. R. & T. Co., 36 N. J., 226, and Chapman *v.* New Haven R. R. Co., 19 N. Y., 341, relied on by the counsel for defendant in error at the trial, are in direct conflict with our cases of Lockhart *v.* Lichtenthaler, and

[Borough of Carlisle v. Brisbane.]

P. & R. R. R. Co. v. Boyer, and cannot be recognized as authority here,—and as there is greater reason for imputing the negligence of the owner and driver of a private vehicle, to the passenger who voluntarily and gratuitously rides upon it, and over which he may exercise control, than there is for imputing the negligence of an omnibus or street car company to the passenger carried upon such public conveyance, over which he cannot exercise any control, we think the cases of Robinson v. R. R. Co., 66 N. Y., 11; Dyer v. Erie R. W. Co., 71 N. Y., 228, and Marston v. R. R. Co., 84 N. Y., 247, are not defensible under the law as it exists in Pennsylvania.

*J. M. Weakley* and *F. E. Bellzhoover* (*F. Maust* with them), for defendant in error.—"It is the general American rule that there is no privity in negligence between passenger and carrier, and that therefore when the passenger brings an action of negligence the contributory negligence of his carrier is not to be imputed to him in any degree for the purpose of barring his remedy. The rule of Thorogood v. Bryan is wholly repudiated. Neither upon the theory of agency nor upon theory of identity, nor from supposed considerations of public policy and convenience, will the passenger be held to such a connection with the common carrier by which he is transported as to be responsible for negligence on his part: Beach on Negligence, § 36; Danville v. Stewart, 2 Met. (Ky.,) 119; Bennet v. New Jersey, 36 N. J. Law, 225; Covington v. Kelley, 36 Ohio St., 86; Albion v. Hetrick, 90 Indiana, 545; Cuddy v. Horn, 46 Mich., 596; Wabash v. Shacklet, 105 Ill., 364; Knapp v. Dagg, 18 How. Pr. Rep., 165; Chapman v. New Haven, 19 N. Y., 341; Webster v. Hudson, 38 N. Y., 260; Robinson v. N. Y. C., 66 N. Y., 11; Dyer v. Erie, 71 N. Y., 228; Masterson v. N. Y. C., 84 N. Y., 227; Ricker v. Freeman, 50 N. H., 420; Eaton v. Boston, 11 Allen, 500; 12 Minn., 357; 23 Ala., 469, &c. Also Shear. & Red. on Neg., § 46; Whar. Neg., § 395; Thompson Carriers, 284; 1 Sm. Lead. Cas., 8th ed. 505.

It is settled law in Pennsylvania "that an excavation in a road or street made for a lawful purpose must be fenced and lighted:" Humphreys v. Armstrong Co., 6 P. F. S., 216. This has been reaffirmed in Lower Macungie township v. Merkhoffer, 71 Pa. St., 276; Scott township v. Montgomery, 95 Id., 444, and numerous other cases.

The principle contended for in this case is sustained in Dyer v. Erie R. R., 71 N. Y., 228; Robinson v. N. Y. C. & H. R. R. Co., 66 N. Y., 11; Masterson v. N. Y. C. & H. R. R. Co., 84 N. Y., 247.

[Borough of Carlisle *v.* Brisbane.]

Mr. Justice Clark delivered the opinion of the court, October 4th, 1886.

The general rule of the law undoubtedly is, where one suffers an injury through the concurrent negligence of two or more persons, they are jointly liable, and may be proceeded against for the damages sustained, either jointly or severally at the option of the party injured; unless the latter by his own negligence has contributed to the injury, in which case, the law will not afford him any remedy whatever, against any or all of the persons whose wrong, in concurrence with his own, caused the injury; the rule is, however, not without its exceptions. Where goods, in the hands of a common carrier, are injured by the negligent act of a third party, to which the negligence of the carrier contributes, and an action is brought by the owner against the third party, the carrier's contributory negligence is a good defence: Vanderplank *v.* Miller, 1 Mood. & Malk., 169; Simpson *v.* Hand, 6 Wh., 311.

So also, where a passenger is personally injured by the joint negligence of his carrier and another party, his remedy is against the common carrier alone. The latter question was first raised in this court, and was very fully discussed, in the case of Lockhart *v.* Lichtenthaler, 10 Wright, 151. The decision in that case, was grounded upon the doctrine of the English cases, Budge *v.* Grand Junc. Railway Co., 3 M. & W., 247, (1838) in the Court of Exchequer; Thorogood *v.* Bryan, 65 Eng. Com. Law, 114; and Catlin *v.* Hills, Id., 123, in the Common Bench, (1849). These cases have since been followed and approved in the Exchequer by Armstrong *v.* Lancaster & York Railway Co., 44 L. J. Exch., 89. The principle upon which all these English cases appear to have been determined, is that the passenger is so far identified with the carriage in which he is travelling, that want of care on part of the driver, will be a defence of the owner of the other carriage that directly caused the injury.

Our own case of Lockhart *v.* Lichtenthaler, *supra*, was followed by Phila. & Read. R. R. Co., *v.* Boyer, 1 Out., 91; an action against the railroad company, to recover damages for the death of a person, caused by a collision of the defendant's train, with a street car, in which the deceased was a passenger, it was held, that in order to recover, the plaintiffs must show, not only that the death resulted directly from the defendant's negligence, but that the negligence of the carrier company did not contribute to the result. Therefore, although there is certainly a wide difference of opinion between the courts of this and other states on the subject, it seems to be well settled as the law of Pennsylvania that the remedy of a passenger, injured by the joint negligence of his carrier and

[Borough of Carlisle *v.* Brisbane.]

another, is against the common carrier only. Cornman, however, was not a common carrier; he was the owner of the horse and sleigh and was the driver; Brisbane was a friend of Cornman's, visiting Carlisle and occupied a seat in the sleigh by his invitation; the accident occurred whilst returning from a visit to the poor house. Nor was Cornman the servant of Brisbane; as the driver, he was neither under Brisbane's direction or control, nor was Brisbane under his control. Brisbane had simply accepted the friendly offer of a seat in Cornman's sleigh; he had a right to expect from Cornman ordinary skill and care, in the management of the conveyance, and precisely the same degree of care from the municipality of the Borough of Carlisle, in the condition and repair of the streets over which they might pass.

There is no evidence whatever that Brisbane knew that Cornman was a reckless or unskillful driver, or that he saw or by the exercise of reasonable care at the time could see, or ought to have seen, the dangerous condition of the street. Indeed, the jury has found that he was not personally aware of either, and no question can arise, involving this view of the case. It is said, however, that although there is no evidence of any actual negligence on the part of Brisbane, upon the principle of Lockhart *v.* Lichtenthaler, the negligence of Cornman is to be imputed to him.

The rationale of the rule in Thorogood *v.* Bryan is said by Colton, J., to be the identity of the passenger with his own vehicle; but in Lockhart *v.* Lichtenthaler this reason is rejected, and we think the foundation of the principle is expressed by Mr. Justice Thompson, with much more care and accuracy, as follows: "I would say the reason for it is that it better accords with the policy of the law to hold the carrier alone responsible in such circumstances, as an incentive to care and diligence. As the law fixes responsibility upon a different principle in the case of the carrier, as already noticed, from that of a party who does not stand in that relation to the party injured, the very philosophy of the requirement of greater care is, that he shall be answerable for omitting any duty which the law has defined as his rule and guide, and will not permit him to escape, by imputing negligence of a less culpable character to others, but sufficient to render them liable for the consequences of his own. It would be altogether more just to hold liable him who has engaged to observe the highest degree of diligence and care, and has been compensated for so doing, rather than him upon whom no such obligation rests, and who, not being compensated for the observance of such a degree of care, acts only on the duty to observe ordinary care, and may not be aware, even, of the presence of a party who

[Borough of Carlisle *v*. Brisbane.]

might be injured." When the reason of a rule of law ceases, the rule itself ceases. The law fixes the responsibility of the persons or parties involved in this transaction, upon precisely the same basis. There is certainly no policy of law which requires that the driver of a private carriage or sleigh, who, actuated by the motive of kindness alone, and without compensation, may undertake to convey a friend through the streets of a city or town, shall be held to a higher standard of care towards that friend than the city or town through whose streets they pass. Both Cornman and the municipality of Carlisle borough were bound to Brisbane for the exercise of ordinary care and diligence, only. If Cornman had been a common carrier he would have been a carrier for compensation, and would have been obliged to observe the highest degree of diligence and care ; the policy of the law in such a case, it is said, would not permit him to escape, by interposing the negligence of others of a less culpable character.

The doctrine declared in Lockhart *v*. Lichtenthaler, and Phila. & Read. R. R. Co. *v*. Boyer is not applicable to this case, and there is no sound principle of law which will preclude the plaintiff from seeking redress, from both or either of the persons, through whose negligence he was injured. Brisbane was answerable for his own negligence alone ; the negligence of Cornman, under the circumstances, cannot be imputed to him, so as to bar his recovery in this case.

The case at bar is in every respect similar to the case of Robinson *v*. N. Y. C. & H. R. R. Co., 66 N. Y., 11, where a female accepted an invitation to ride in a buggy with a person who was entirely competent to manage a horse, and it was held that if the defendant company was negligent and the plaintiff free from negligence herself, she might recover from the company, although the driver of the buggy might have been guilty of negligence which contributed to the injury. This case was followed by Dyer *v*. Erie R. R., 71 N. Y., 228. Mr. Justice Miller, delivering the opinion of the Court, says: "It is insisted that the Court erred in charging the jury that the negligence of Stimpson was no bar to the action, and that the negligence of the driver would not prevent a recovery. The solution of the question raised must depend on the position which Stimpson occupied toward the plaintiff. The plaintiff rode with Stimpson at his invitation, gratuitously, in Stimpson's wagon. The latter, driving the team, exercised entire control over it, and was travelling entirely on business of his own. Stimpson was not hired by the plaintiff, or in his employ, or in any sense his agent, nor had the plaintiff any control or direction of the team, or its management, or over Stimpson himself. There is no pretence but that Stimpson was entirely

competent to take charge of the team himself, nor that he did not possess the requisite skill to manage and control the same. It is difficult to see upon what principle the negligence of Stimpson can affect the plaintiff or be imputed to him.

These causes in New York were afterwards followed by Masterson v. N. Y. C. & H. R. R. Co., 84 N. Y., 247, which is to the same effect.

It is true that the authority of these cases may be supposed to be somewhat impaired in Pennsylvania by the fact that in New York the rule of Thorogood v. Bryan has been repudiated (Chapman v. New Haven R. R. Co., 19 N. Y., 34), but, as we hold the rule of policy only to apply to the case of a common carrier, there is no reason to discredit the authority of that Court in cases where this rule of policy does not apply.

In this view it is not important what Cornman may have previously known as to the condition of the road, and as it is shown that Brisbane never had any knowledge of it, the case was to be considered by the jury, so far as Brisbane is concerned, just as if both were passing over the road for the first time. A stranger in the twilight, or when snow was on the ground, as matter of fact might certainly assume, that the centre of a public road or street within the corporate limits of a populous town, over which hundreds of wagons passed every day, especially if no other route is plainly designated, was in a passable condition. In the consideration of a question of negligence, on part of a stranger, certainly under such circumstances, it was proper to show that he took the centre and not the side of the opened street. There may be cases where the conformation of the ground itself would clearly indicate that the centre of a public road is not the travelled route, and in such case this circumstance may be sufficient to give notice; but in all ordinary cases, the centre of a public street passing between the open lots of a populous town, in the usual course of travel, and in the night time, or when the route is obscured by snow, may be taken as the travelled route; if the municipal officers caused an obstruction to be placed on that part of the highway, it was their duty to give some appropriate warning of the fact.

Nor can we see any valid objection to the evidence, showing where the actual travelled route was before the street was macadamized. If there was nothing to indicate to a stranger that the route for travel was at the side of the road, we have said he might assume the route to be in the centre, how then could it harm the defendant to show that the route had previously been in the centre, although the plaintiff did not know the fact. The evidence was clearly competent, however; its tendency was to show that the only obstruction of the street

[Dreisbach *v.* Mechanics' Nat. Bank.]

was that which the officers of the municipality had themselves negligently placed there, and that there was nothing in the natural conformation of the ground to prevent the use of the central part of the road at this point, or to warn the plaintiff that the travelled route was not in the centre, but along the side of the street.

It is an undoubted and indeed an undisputed fact that the centre of the street had been the usual course of travel, and we think it was certainly competent to show it. The learned Court very plainly instructed the jury that if the way provided was safe, convenient, and so well marked that no man of ordinary prudence could mistake it, it was not necessary that it should have been along the middle of the street, and that in providing such a way at the side of the street, they did their whole duty to the public, unless on the central part, where it had previously been used as the highway, they placed a dangerous obstruction, without giving any warning of the fact.

The principle upon which this evidence was admitted is perhaps inaccurately stated, but as the proof was properly received, we cannot reverse upon the ground that proper reasons were not assigned for its admission.

The judgment is affirmed.