DUVAL v. RAILROAD CO.

(Filed March 8, 1904).

1. NEGLIGENCE—*Contracts—Carriers—Ordinances.*

Where a railroad company contracts with a town not to run its
trains through the street above a certain speed, a breach of
the contract is some evidence of negligence in an action for
personal injury.

2. NEGLIGENCE—*Imputable Negligence—Contributory Negligence.*

The negligence of a driver of a conveyance is not imputable to a
passenger therein.

ACTION by Della Duval against the Atlantic Coast Line
Railroad Company, heard by *Judge Frederick Moore* and a
jury, at November Term, 1903, of the Superior Court of
JONES County. From a judgment for the defendant, the
plaintiff appealed.

*D. L. Ward* and *M. DeW. Stevenson,* for the plaintiff.
*Simmons & Ward* and *N. J. Rouse,* for the defendant.

DOUGLAS, J.   This is an action for damages for personal
injuries.   The jury found that the plaintiff was injured by
the negligence of the defendant, and that she contributed to
her injury by her own negligence.   There are but two excep-
tions that we think it necessary to pass upon in this appeal,
both to the charge of the Court.   Among other things the
Court charged as follows: "The plaintiff introduced a con-
tract wherein it is provided that the East Carolina Land and
Railroad Company shall not run its locomotive through the
streets of New Bern at a speed greater than three miles an
hour.   That the whistle shall be sounded before entering
upon said streets, and the bell upon the engine tolled while

passing through the streets, etc.   And it is admitted that the defendant has succeeded to the rights and liabilities of the East Carolina Land and Lumber Co. The Court charges you that this is a contract between the city and the defendant company, and that there is no evidence that its provisions have been enacted into an ordinance by the city, and the jury cannot consider the provisions of the same as bearing upon the question of the negligence of the defendant."

In this we think there was error.   The only object the city could have had in limiting the rate of speed at which a train was permitted to run through its streets was the protection of the traveling public.  It was similar to an ordinance, in purpose and legal effect at least, in civil actions.  We do not feel compelled in this case to go to the extent of saying that the violation of such a provision in a contract gives rise to a cause of action; but we hold that, equally with the violation of an ordinance, it is evidence of negligence on the part of the defendant.   If the defendant obtained the grant of its right of way by virtue of such a contract, it has no right to complain at the reasonable enforcement of its conditions and limitations.   *Gorrell v. Water Co.,* 124 N. C., 328, 70 Am. St. Rep., 598, 46 L. R. A., 513.

The Court further charged the jury as follows: "If you find from the evidence, by the greater weight or preponderance thereof, that the plaintiff was riding in a buggy driven and controlled by her father; that the plaintiff's father was negligent in approaching the crossing and that such negligence contributed to the injury of which the plaintiff complains as a proximate cause thereof, then such negligence of the plaintiff's father is imputable to the plaintiff as her own negligence."

This also was error.   Imputable negligence, or identification, as it is sometimes called from analogy to the Roman law, has never been recognized in this State, and has received but

DUVAL v. RAILROAD CO.

scant recognition in any part of this country. The question was directly presented and expressly decided in *Crampton v. Ivie,* 126 N. C., 894, in which this Court says: "We may regard it as settled law that the negligence of a driver of a public conveyance is not imputable to a passenger therein, unless the passenger has assumed such control and direction of said vehicle as to be considered as practically in exclusive possession thereof. In other words, the possession of the passenger must be such as to supersede for the time being the possession of the owner to the extent of making the driver the temporary servant of the passenger."

In the case at bar it appears that the plaintiff was not traveling in a *public* conveyance but in a buggy driven by her father. We will assume that she was not a passenger for hire, but was riding in her father's buggy as his guest. We do not think this makes any difference either in principle or in legal liability. She was certainly not in exclusive control of the vehicle, nor could her father be considered in any sense as her servant. We are aware that in a few instances it has been held that while contributory negligence cannot be imputed to one riding in a hired vehicle, it may be imputed to him if he is a mere guest. The overwhelming weight of authority is against any such distinction, and in common with nearly all the courts of final jurisdiction we are utterly unable to see any reasonable basis for such a conclusion.

The only ground for the doctrine of imputable negligence in any of its phases is the assumed identity of the passenger and driver arising out of an implied agency. It is contended, as he selected his own driver he made him his agent, not only for the general purposes of his employment but for all possible contingencies that might happen. Under this doctrine it would seem that if the driver broke the passenger's neck he would be acting within the scope of his agency. This

may be so, but it does not seem so to us. Of course if the
passenger were injured through the negligence of the driver
alone, he must look alone to him or to his master for his re-
covery; but if he is injured through the concurring negli-
gence of the driver and some one else he may sue either.
This is equally true whether the plaintiff is a passenger for
hire or a mere guest. We see no reason why the latter should
be placed at any legal disadvantage. In fact, it would seem
that if there were any difference, the passenger for hire,
having the legal right to the services of his driver, would be
in a position to exercise a greater degree of control than one
whose presence was merely permissive. An examination
of the origin, growth and decadence of the doctrine seems to
us to show the correctness of our conclusions aside even from
the weight of authority. The doctrine that the negligence
of a driver was imputable to the passenger is considered to
have originated in the English case of *Thorogood v. Bryan,*
decided in 1849, and reported in 8 C. B., 115. The action
was brought against the owner of an omnibus by which the
deceased was run over and killed. The omnibus in which
he had been carried had set him down in the middle of the
road instead of drawing up to the curb, and before he could
get out of the way he was run over by the defendant's omni-
bus, which was coming along at too rapid a pace to be stopped
in time to prevent the injury. The Court directed the jury
that, "If they were of opinion that want of care on the part
of the driver of Barber's omnibus in not drawing up to the
curb to put the deceased down, or any want of care on the
part of the deceased himself had been conducive to the in-
jury, in either of those cases, notwithstanding the defendant
by her servant had been guilty of negligence, their verdict
must be for the defendant." This case, after being much
criticised, was expressly overruled in 1888 by the House of
Lords in the case of *The Bernine,* 13 App. Cas., 1, in which

opinions were delivered by *Lords Herchel, Bramwell* and *Watson.*

Among other things in his opinion *Lord Herchel* says: "In support of the proposition that this establishes a defense, they rely upon the case of *Thorogood v. Bryan* (1), which undoubtedly does support their contention. This case was decided as long ago as 1849 and has been followed in some other cases; but though it was early subjected to adverse criticism it has never come for revision before a court of appeals until the present occasion. * * * It is necessary to examine carefully the reasoning by which this conclusion was arrived at. *Coltman, J.,* said: "It appears to me that having trusted the party by selecting the particular conveyance the plaintiff has so far identified himself with the owner and her servants that if any injury results from their negligence he must be considered a party to it. In other words, the passenger is so far identified with the carriage in which he is travelling that want of care of the driver will be a defense of the driver of the carriage which directly caused the injury." *Maule* and *Vaughan Williams, JJ.,* also dwelt upon this view of the identification of the passenger with the driver of the vehicle in which he is being carried. The former thus expresses himself: "I incline to think that, for this purpose, the deceased must be considered as identified with the driver of the omnibus in which he voluntarily became a passenger, and that the negligence of the driver was the negligence of the deceased." *Vaughan Williams, J.,* said: "I think the passenger must for this purpose be considered as identified with the person having the management of the omnibus he was conveyed by."

With the utmost respect for these eminent Judges, I must say that I am unable to comprehend this doctrine of identification upon which they lay so much stress. In what sense is the passenger by a public stage-coach, because he avails

himself of the accommodation afforded by it, identified with the driver? The learned Judges manifestly do not mean to suggest (though some of the language used would seem to bear that construction) that the passenger is so far identified with the driver that the negligence of the latter would render the former liable to third persons injured by it. I presume that they did not even mean that the identification is so complete as to prevent the passenger from recovering against the driver's master: though if "negligence of the owner's servants is to be considered negligence of the passenger," or if he "must be considered a party" to their negligence, it is not easy to see why it should not be a bar to such an action. In short, so far as I can see, the identification appears to be effective only to the extent of enabling another person whose servants have been guilty of negligence to defend himself by the allegation of contributory negligence on the part of the person injured. But the very question that had to be determined was whether the contributory negligence of the driver of the vehicle was a defense as against the passenger when suing another wrongdoer. To say that it is a defense because the passenger is identified with the driver appears to be the question, when it is not suggested that this identification results from any recognized principle of law, or has any other effect than to furnish that defense, the validity of which was the very point in issue. Two persons may no doubt be so bound together by the legal relation in which they stand to each other that the acts of one may be regarded by the law as the acts of the other. But the relation between the passenger in a public vehicle and the driver of it certainly is not such as to fall within any of the recognized categories in which the act of one man is treated in law as the act of another. I pass now to the other reasons given for the judgment in *Thorogood v. Bryan.* *Maule, J.,* says: "On the part of the plaintiff it is suggested that a passenger

DUVAL *v.* RAILROAD CO.

in a public conveyance has no control over the driver. But I think that cannot with propriety be said. He selects the conveyance. He enters into a contract with the owner, whom by his servant, the driver, he employs to drive him. If he is dissatisfied with the mode of conveyance he is not obliged to avail himself of it.    *    *    *    But as regards the present plaintiff, he is not altogether without fault; he chose his own conveyance, and must take the consequences of any default on the part of the driver whom he thought fit to trust." I confess I cannot concur in this reasoning. I do not think it well founded either in law or in fact. What kind of control has the passenger over the driver which would make it reasonable to hold the former affected by the negligence of the latter? And is it any more reasonable to hold him so affected because he chose the mode of conveyance, that is to say, drove in an omnibus rather than walked, or took the first omnibus that passed him instead of waiting for another? And when it is attempted to apply this reasoning to passengers travelling in steamships or on railways the unreasonableness of such doctrine is even more glaring.

The only other reason given is contained in the judgment of *Creswell, J.,* in these words: "If the driver of the omnibus the deceased was in had, by his negligence or want of due care and skill, contributed to an injury from a collision his master clearly could maintain no action. And I must confess I see no reason why a passenger who employs the driver to convey him stands in any better position." Surely, with deference, the reason for the difference lies on the very surface. If the master in such a case could maintain no action it is because there existed between him and the driver the relation of master and servant. It is clear that if his driver's negligence alone had caused the collision he would have been liable to an action for the injury resulting from it to third parties. The learned Judge would, I imagine, in

that case have seen a reason why a passenger in the omnibus stood in a better position than the master of the driver. I have now dealt with all the reasons on which the judgment in *Thorogood v. Bryan* was founded, and I entirely agree with the learned Judges in the Court below in thinking them inconclusive and unsatisfactory."

In his opinion *Lord Watson* says: "It humbly appears to me that the identification upon which the decision in *Thorogood v. Bryan* is based has no foundation in fact. I am of opinion that there is no relation constituted between the driver of an omnibus and its ordinary passengers which can justify the inference that they are identified to any extent whatever with his negligence. He is the servant of the owner, not their servant; he does not look to them for orders and they have no right to interfere with his conduct of the vehicle except, perhaps, the right of remonstrance when he is doing, or threatens to do, something that is wrong and inconsistent with their safety. Practically they have no greater measure of control over his actions than the passenger in a railway train has over the conduct of the engine-driver."

We have quoted at length from this case because it is the distinct and final repudiation of the doctrine by the highest judicial tribunal in England, where it originated, as well as from the further fact that the reasoning upon which the learned and able opinions are founded apply equally to cases where the plaintiff is a mere guest. The same may be said of *Little v. Hackett,* 116 U. S., 336, which is cited with approval by *Lord Herchel* in "The Bernia." Hackett the plaintiff was injured by the collision of a railroad train with the carriage in which he was riding. The evidence tended to show that the accident was the result of the concurring negligence of the managers of the train and of the driver of the carriage—of the managers of the train in not giving the usual signals of its approach by ringing a bell and blowing

a whistle, and in not having a flagman on duty; and of the
driver of the carriage in turning the horses upon the track
without proper precautions to ascertain whether the train
was coming.  The defense was contributory negligence in
driving on the track, the defendant contending that the driver
was thereby negligent, and that his negligence was to be im-
puted to the plaintiff.  The Court left the question of the
negligence of the parties in charge of the train and of the
driver of the carriage to the jury, and no exception was
taken to its instructions on this head.  But with reference
to the alleged imputed negligence of the plaintiff, assuming
that the driver was negligent, the Court instructed them that
unless the plaintiff interfered with the driver and controlled
the manner of his driving his negligence could not be im-
puted to the plaintiff.  Upon  appeal  the  judgment  was
affirmed.  *Justice Field* speaking for a unanimous Court,
says, on page 374: "Cases cited from the English courts, as
we have seen, and numerous others decided in the courts of
this country, show that the relation of master and servant
does not exist between the passenger and the driver or be-
tween the passenger and the owner.  In the absence of this
relation the imputation of their negligence to the passenger,
where no fault of omission or commission is chargeable to
him, is against all legal rules.  If their negligence could be
imputed to him it would render him equally with them re-
sponsible to third parties thereby injured, and would also
preclude him from maintaining an action against the owner
for injuries received by reason of it.  But neither of these
conclusions can be maintained; neither has the support of any
adjudged cases entitled them to consideration.  The truth is,
the decision in *Thorogood v. Bryan* rests upon indefensible
ground.  The identification of the passenger with the negli-
gent driver or the owner, without his personal co-operation
or encouragement, is a gratuitous assumption.  There is no

such identity.   The parties are not in the same position.
The owner of a public conveyance is a carrier and the driver
or the person managing it is his servant.   Neither of them
is the servant of the passenger and his asserted identity with
them is contradicted by the daily experience of the world."
Again, the Court says on page 379 : "There is no distinction
in principle whether the passengers be on a public convey-
ance like a railroad train or an omnibus, or be on a hack
hired from a public stand in the street, for a drive.   Those
on a hack do not become responsible for the negligence of the
driver if they exercise no control over him further than to
indicate the route they wish to travel or the places to which
they wish to go.   If he is their agent so that his negligence
can be imputed to them, to prevent their recovery against a
third party he must be their agent in all respects, so far as
the management of the carriage is concerned, and responsi-
bility to third parties would attach to them  for  injuries
caused by his negligence in the course of his employment.
But, as we have already said, responsibility cannot within
any recognized rules of law be fastened upon one who has in
no way interfered with and controlled in the matter causing
the injury.   From the simple fact of hiring the carriage or
riding in it no such liability can arise.   The party hiring
or riding must in some way have co-operated in producing
the injury complained of before he incurs any liability for
it.   'If the law were otherwise,' as said by *Mr. Justice Depue*
in his elaborate opinion in the latest case in New Jersey, 'not
only the hirer of the coach but also all the passengers in it
would be under a constraint to mount the box and superin-
tend the conduct of the driver in the management and control
of his team, or be put for remedy exclusively to an action
against the irresponsible driver or equally irresponsible
owner of a coach taken, it may be from a coach stand, for
the consequences of an injury which was the product of the

co-operating wrongful acts of the driver and of a third person, and that, too, though the passengers were ignorant of the character of the driver, and of the responsibility of the owner of the team, and strangers to the route over which they were to be carried.' "

The Court further cites with approval the case of *Dyer v. Railroad,* 71 N. Y., 228, in which the facts are very similar to those in the case at bar, in the following words: "The plaintiff was injured while crossing the defendant's railroad track on a public thoroughfare. He was riding in a wagon by the permission and invitation of the owner of the horses and wagon. At that time a train standing south of certain buildings, which prevented its being seen, had started to back over the crossing without giving the driver of the wagon any warning of its approach. The horses becoming frightened by the blowing off of steam from engines in the vicinity became unmanageable and the plaintiff was thrown or jumped from the wagon and was injured by the train which was backing. It was held that no relation of principal and agent arose between the driver of the wagon and the plaintiff, and although he traveled voluntarily, he was not chargeable with negligence, and there was no claim that the driver was not competent to control and manage the horses."

In *Transfer Co. v. Kelly,* 36 Ohio St., 86, 38 Am. Rep., 558, the plaintiff below (Kelly) was injured while riding on a street car in collision with a car of the Transfer Co. and was permitted to recover although it appeared that the servants of both companies were negligent. The Chief Justice in delivering the opinion of the Court, said: "It seems to us therefore that the negligence of the company, or of its servants, should not be imputed to the passenger, where such negligence contributes to his injury jointly with the negligence of a third party, any more than it should be so imputed where the negligence of the company, or its servants, was the

sole cause of the injury." "Indeed," the Chief Justice added, "It seems as incredible to my mind that the right of a passenger to redress against a stranger for an injury caused directly and proximately by the latter's negligence, should be denied on the ground that the negligence· of his carrier contributed to his injury, he being without fault himself, as it would be to hold such passenger responsible for the negligence of his carrier whereby an injury was inflicted upon a stranger. And of the last proposition it is enough to say that it is simply absurd."

In *Robinson v. Railroad,* 66 N. Y., 11, 23 Am. Rep., 1, *Church, C. J.,* a distinguished jurist, speaking for an able Court, says: "It is therefore the case of a gratuitous ride by a female upon the invitation of the owner of a horse and carriage. The plaintiff had no control of the vehicle nor of the driver in its management. It is not claimed but that Conlon was an able-bodied, competent person to manage the establishment, nor that he was intoxicated or in any way unfit to have charge of it. Upon what principle is it that his negligence is imputable to the plaintiff? It is conceded that if by his negligence he had injured a third person she would not be liable. She was not responsible for his acts and had no right and no power to control them. True she had consented to ride with him, but as he was in every respect competent and suitable she was not negligent in doing so. Can she be held by consenting to ride with him to guarantee his perfect care and diligence? There was no necessity for riding with him. It was a voluntary act on the part of the plaintiff, but it was not an unlawful or negligent act. She was injured by the negligence of a third person and was free from negligence herself, and I am unable to perceive any reason for imputing Conlon's negligence to her." Again, the Court says, on page 13: "I am unable to find any legal principle upon which to impute to the plaintiff the negligence

DUVAL *v.* RAILROAD CO.

of the driver.   The whole argument on behalf of the appel-
lants on this point is contained in the following paragraph
from the brief of its counsel: 'So if the plaintiff had pro-
ceeded on this journey upon the invitation of Conlon for the
like purpose, she having voluntarily entrusted her safety to
his care and prudence, and thus exposed herself to the risk
of injury arising from his negligence or want of skill, she
would be precluded from recovering if he thereby contributed
to her injury.'   If this argument is sound, why should it not
apply in all cases to public conveyances as well as private?
The acceptance of an invitation to ride creates no more re-
sponsibility for the acts of the driver than the riding in a
stage-coach or even a train of cars, providing there was no
negligence on account of the character or condition of the
driver or the safety of the vehicle, or otherwise.   It is no
excuse for the negligence of the defendant that another per-
son's negligence contributed to the injury for whose acts the
plaintiff was not responsible.   The rule of contributory neg-
ligence is very strict in this State and should not be extended,
nor should the rule of imputable negligence be extended to
new cases where the reason for its adoption is not apparent."

In *Railroad Co. v. Lapsley,* 51 Fed. Rep., 174, 16 L. R.
A., 800, *Sanborn C. J.,* speaking for the Court, says: "But
where the owner and driver of a team and carriage invites
another to ride in his carriage no relation of principal and
agent is created, no relation of master and servant is estab-
lished, the owner and driver of the team are not controlled
by and are not in any sense the agents of the invited guest,
and to hold him responsible for the negligence of the former
by whose permission alone he rides is unauthorized by the
law and repugnant to reason.   That he who suffers injury
from another's negligence may recover compensation of the
wrongdoer is a principle founded in natural justice and sus-
tained by every precedent.   That where the negligence of the

DUVAL *v.* RAILROAD Co.

person injured has contributed to the injury he cannot so recover, because it is impracticable in the administration of justice to divide and apportion the compensation in proportion to the varying degrees of concurring negligence is equally well settled. But that he whose wrongful act or omission has caused the injury and damage, and who upon every consideration of justice and reason ought to make compensation for it, shall be permitted to escape because a third person over whom the injured person had no control and whose only relation to him was that of a guest to his host has been guilty of negligence that contributed to the injury, is neither just nor reasonable. According to the verdict of this jury a loss of $1,000 was entailed upon the decedent by the negligence of this defendant. The defendant's wrongful omission was the proximate cause of this damage. The decedent in no way caused or contributed by any act or omission of hers to this injury. She had no control over her brother, the driver, who may have contributed by his carelessness to the damage. Upon what principle, now, can it be justly said that the decedent must bear all this loss when she neither caused, was responsible for, nor could have prevented it, because this third person assisted to cause the injury, the proximate cause of which was the wrongful act of the defendant company? If there exists in the realms of jurisprudence any sound principle upon which so unrighteous a punishment of the innocent and the discharge of the guilty may be based we have been unable to discover it."

In *Dean v. Railroad,* 129 Pa. St., 514, 6 L. R. A., 143, 15 Am. St. Rep., 733, *Clark, J.,* delivering the opinion of the Court, says, on page 524: "Quotations might be given from many cases in the different States illustrating the very firm and emphatic manner in which the doctrine of this celebrated case has been denied. The authorities in England and the great current of authorities of this country are

DUVAL *v.* RAILROAD CO.

against it. Nor can I see why, upon any rule of public policy, a party injured by the concurrent and contributory negligence of two persons, one of them his common carrier, should be held, and the other released from liability. As to this, I speak only for myself. In my opinion there is no principle consonant with common sense, common honesty or public policy, which should hold one not guilty of any negligence, either of omission or commission, for the negligence of another imputed to him under such circumstances. Although in *Carlisle v. Brisbane,* 113 Pa., 544, I may appear to have accepted that doctrine, I mean merely to state that the ground upon which this Court had rested that rule was better than that taken by the English courts. But if this were not so, Fields was not a common carrier; Dean was riding in the wagon merely by invitation of Fields, who happened to be going in the direction of Fields' home with a load of provisions. He was carried without compensation, merely as an act of kindness on the part of Fields, who had sole control of the team and of the wagon. The case is similar in this respect to *Carlisle v. Brisbane, supra,* and to the case of *Follman v. Mankato,* 29 N. West, 317, 59 Am. Rep., 340. We are clearly of opinion that if Dean himself was guilty of no negligence, the negligence of Fields cannot be imputed to him."

This case was expressly approved in *Bunting v. Hogsett,* 139 Pa., 363, 12 L. R. A., 268, 23 Am. St. Rep., 192, where the Court uses the following language, on page 376: "But *Thorogood v. Bryan, supra,* which is the leading case, has been recently overruled in the English Court of Appeals. The Bernina (*Mills v. Armstrong*), 2 Prob. & D., 58, and the doctrine, although formerly accepted in many of the States, is now generally disapproved. The authorities in England and the great current of authority in this country are against it. The cases are collected in *Dean v. Railroad,*

*supra.* They are numerous, and it is unnecessary to refer to them here. What was there said was given as an individual opinion merely, and was, to some extent, perhaps, *obiter dictum,* but we are now unanimously of opinion that the views there expressed, somewhat in advance, contain the proper exposition of the law. The identification of the passenger with the negligent driver, or the owner, or with the carrier, as the case may be, without his co-operation or encouragement, is a gratuitous assumption. As *Mr. Justice Field* said in *Little v. Hackett,* 116 U. S., 366: 'There is no such identity. The parties are not in the same position. The owner of a public conveyance is a carrier, and the driver or the person managing it is his servant, neither of them is the servant of the passenger, and his asserted identity with them is contradicted by the daily experience of the world.' The *rationale* of the rule of *Thorogood v. Bryan* is expressly disavowed in our own case of *Lockhart v. Litchtenthaler,* and it is now rejected as untenable and wholly indefensible. Nor is there any rule or principle of public policy which will support such a doctrine. If a person is injured by the concurrent and contributory negligence of two persons, one of them being at the time the common carrier of his person, there is no reason, founded in public policy or otherwise, which should release one of them and hold the other. It is true the carrier may be subjected to a higher degree of care than his *co-tort feasor,* but this affords no reason why either or both of them should not be held to that degree of care, respectively, which the law imposes upon them, and to be answerable in damages accordingly. The general rule undoubtedly is if a person suffers injury from the joint negligence of two parties, and both are negligent in a manner which contributes to the injury, they are liable jointly and severally, and it would seem in principle to be a matter of no consequence that one of them is a common carrier. Neither

the comparative degrees of care required nor the comparative degrees of culpability established can affect the liability of either."

It is unnecessary, as well as impracticable, to cite all the other cases we have examined on this subject, and so we will confine ourselves to a few in which the precise question under consideration is directly presented. That one who is injured by the joint or concurring negligence of a private person with whom he is riding by invitation as a guest or companion, and a third person, is not chargeable with the negligence of the driver, is held in the following cases: *Masterson v. Railroad Co.,* 84 N. Y., 247, 38 Am. Rep., 510; *Strouse v. Railroad,* 39 N. Y. Supp., 998; *Kessler v. Railroad Co.,* 38 N. Y. Supp., 799; *Street Ry. Co. v. Powell,* 89 Ga., 601; *Leavenworth v. Hatch,* 57 Kan., 57, 57 Am. Rep., 309; *Cahill v. Railroad,* 92 Ky., 345; *Noies v. Boscawen,* 64 N. H., 631, 10 Am. St. Rep., 410; *Ouverson v. Grafton,* 5 N. D., 281; *St. Clair Railroad Co. v. Eadie,* 43 Ohio, 91; *Carlisle v. Brisbane,* 113 Pa., 544, 57 Am. Rep., 483; *Railroad Co. v. Hogeland,* 66 Md., 149, 59 Am. Rep., 159; *Railroad Co. v. State,* 79 Md., 335, 47 Am. St. Rep., 415; *Railroad Co. v. Davis,* 69 Miss., 444; *Follman v. Mankato,* 35 Minn., 522; *Commissioners v. Mutchler,* 137 Ind., 140; 2 Jaggard Torts, sec. 276, p. 982; Bishop Non-Cont. Law, sec. 1070.

The rule is thus stated in 7 A. & E. Enc., 447: "Occupants of private conveyances: In the second class of cases there has been and still is much conflict among the authorities, but the true principle seems to be that when a person is injured by the negligence of the defendant and the contributory negligence of one with whom the injured person is riding as a guest or companion, such negligence is not imputable to the injured person; while on the other hand it may be imputable when the injured person is in a position to exercise authority or control over the driver." *Judge Thompson* in

his Commentary on the Law of Negligence, Vol. I, sec. 502, thus lays down the rule: "Negligence of the driver is not imputed to the passenger on a private conveyance riding by invitation. While there are a few untenable decisions to the contrary, nearly all American courts are agreed that the rule under consideration extends so far as to hold that where a person, while riding on a private vehicle by the invitation of the driver or the owner or the custodian of the vehicle, and having no authority or control over the driver and being under no duty to control his conduct and having no reason to suspect any want of care, skill or sobriety on his part, is injured by the concurring negligence of the driver and a third person or corporation, the negligence of the driver is not imputed to him so as to prevent him from recovering damages from the other *tort feasor.*"

We cannot better close this discussion than by the following quotation from 1 Shearman & Redfield on Negligence, section 66, and in doing so we deem it proper to say that, while we fully approve of the legal conclusions arrived at by the distinguished authors, we do not wish to be held entirely responsible for the vigor of their language: "Doctrine of identification: As already stated, the fact that the injury was caused by the joint negligence of the defendant and a mere stranger is universally admitted to be no defense. But in the famous case of *Thorogood v. Bryan,* an English court invented a new application of the old Roman doctrine of identification, and held that a passenger in a public vehicle, though having no control over the driver, must be held to be so identified with the vehicle as to be chargeable with any negligence on the part of its managers which contributed to an injury inflicted upon such passenger by the negligence of a stranger. In former editions we devoted much space to the refutation of this doctrine of 'identification.' But it is needless to do so any longer, since the entire doctrine has, since our first

edition, been exploded in every court, beginning with New York and ending with Pennsylvania. It was finally overruled in England a few years ago. The only remnant of this doctrine which remains in sight anywhere is the theory that one who rides in a private conveyance thereby makes the driver his agent, and is thus responsible for the driver's negligence, even though he has absolutely no power or right to control the driver. This extraordinary theory, which did not even occur to the hair-splitting Judges in *Thorogood v. Bryan,* was invented in Wisconsin and sustained by a process of elaborate reasoning; and this Wisconsin decision, in evident ignorance of all decisions to the contrary, was recently followed, with some similar reasoning, in Montana; and in Nebraska, without any reasoning whatever; which last is certainly the best method of reaching a conclusion, directly opposed to common sense and to the decisions of twenty other courts. The notion that one is the 'agent' of another, who has not the smallest right to control or even advise him, is difficult to support by any sensible argument. This theory is universally rejected, except in the three States mentioned, and it must soon be abandoned even there."

The doctrine of imputable negligence, as far as it relates to a child, has been fully discussed and expressly repudiated by this Court in *Bottoms v. Railroad,* 114 N. C., 699, 41 Am. St. Rep., 799, 25 L. R. A., 784. Even if this phase of the question were now before us, we could add but little to what was there so fully and ably said.

There must be a

New Trial.