[No. 4610.]

THE COLORADO & SOUTHERN RAILWAY COMPANY v. THOMAS.

1.   **Negligence—Railroad Crossing.**

Where one approaching a railroad crossing is prevented, by noise, from hearing and, by obstruction, from seeing, an approaching train, it is his duty to resort to other means of ascertaining whether a train is approaching, and, after passing such obstruction and noise, should stop and look and listen before venturing upon the·track.

2.   **Negligence—Instructions—Must Be Confined to the Evidence.**

In an action against a railroad company for a death caused by collision with its train, where the evidence conclusively showed that it was impossible for the engineer to have avoided the collision after he discovered the dangerous situation of the

deceased, it was misleading to submit that proposition to the jury, although the instruction was correct, as an abstract proposition of law.

3.  Imputable Negligence.

Where a person was injured by a collision between a railroad train and a vehicle, and the injury was the result of the contributory negligence of the driver of the vehicle, with whom the injured person was riding as a guest or companion, the contributory negligence of the driver is not imputable to the injured person, unless the injured person was in a position to exercise authority or control over the driver, or failed to exercise such care as he could, and should, have exercised, under the particular circumstances, to protect himself.

*Appeal from the District Court of Arapahoe County: Hon. John I. Mullins, Judge.*

Messrs. Dines, Whitted & Dines, for appellant

Mr. T. W. Hoyt, Mr. Clay B. Whitford and Mr. Henry E. May, for appellee.

Mr. Justice Goddard delivered the opinion of the court.

1.  This is an action by Luella A. Thomas against The Colorado and Southern Railway Company to recover damages for the death of her husband, which occurred October 15, 1900, at a point where West Colfax avenue crosses what is known as the Colorado and Southern and Santa Fe joint track, in the city of Denver. About eleven o'clock at night the decedent, in company with one Lester, was riding west on Colfax avenue in a light open buggy. At the place mentioned a train, operated by appellant, coming from the south, struck the horse and buggy and killed both Lester and Thomas. About 200 feet east of this point, the South Park tracks cross the avenue. From this crossing a train approaching from the south may be seen about a mile distant, and, while passing north, for a distance of about three-quarters of a mile. Between the South Park tracks and the

place of the accident, a power house and coal bin is situated on the south side of the avenue, which obstructs the view of an approaching train from one passing west along the avenue for a distance of about 100 to 150 feet. After passing the power house, and at a distance of 25 feet from the outer rail of the track upon which the train was running at the time, there is an unobstructed view south along the track, for a distance of at least 225 feet, and at a point 20 feet from the outer rail, for a distance of 1,000 feet. Two witnesses, Henry F. Wilson and his wife, Bertha C. Wilson, testify that on the night of the accident they were on the avenue where the South Park tracks cross the same, and saw the decedent and Lester pass west along the avenue, driving at a pretty fast trot; that they heard the whistle and saw the train coming, and heard the parties in the buggy say, "We will beat the —— over the crossing;" that they urged the horse to a more rapid pace, and did not check their speed until they were struck by the train. William E. Brown testified that he was passing along Colfax avenue, at the end of an ice plant, which stands just east of the South Park tracks, and saw the two men in the buggy as they passed the west end of the ice plant, and, as the whistle blew, heard the one who was looking up the track, say, "The train is coming," and the other say, "Hurry up and get across the track;" that they then urged their horse into a fast trot and did not decrease its speed until they struck the train. The fact that the horse was driven on a trot while going towards the crossing was corroborated by one of plaintiff's witnesses. In addition to the testimony of witnesses, it is demonstrated by physical facts that the horse collided with the side of the locomotive, and was not struck by the pilot. There is no testimony that in the slightest degree militates against the testimony of the Wilsons and Brown, as to any material

facts testified to by them, nor any circumstance developed in the case that throws discredit upon their evidence; and we are unable to perceive any reason that warranted the jury in disregarding their testimony and all the admitted circumstances surrounding the case, and base their verdict on some undiscernable inference or conjecture.

Whether Thomas and Lester heard the whistle and saw the train, as stated by these witnesses, or not, the fact remains that they drove with more or less speed from the South Park tracks to the place of the disaster without stopping, and apparently without looking or listening for the approaching train, and without the slightest manifestation of that reasonable care or common prudence that the circumstances demanded, and that the law exacts. The duty that the law imposes upon a person approaching a railway crossing is well settled by the decisions of this court. —*Railway Co. v. Crisman,* 19 Colo. 30; *Railroad Co. v. Nuney,* 19 Colo. 36; *Railroad Co. v. Gustafson,* 21 Colo. 393.

Counsel for appellee insist that the decedent was excused from looking and listening because the noise created by the power house would prevent his hearing the approaching train, and the buliding would have prevented him from seeing the train if he had looked. Under such circumstances it was his duty to resort to other means of ascertaining whether a train was approaching, and it was clearly his duty, after passing this obstruction, to stop, look and listen. Had he done so he would have seen the train in time to avoid the accident.

As was said in *Seefeld v. The C. M. & St. Paul Ry. Co.,* 70 Wis. 216, and quoted in *Railway Co. v. Crisman, supra,* "If the view of a traveler on the highway, approaching a railroad crossing, is so obstructed that he cannot see an approaching train in

time to stop his team before colliding with it, if he knows that a train is due at such crossing at or about such time, and if he is unable to hear the approaching train when his team is in motion, whether by reason of the force and direction of the wind or of noises in the vicinity, whether made by his own wagon or by other causes, ordinary care requires him to stop his team while he may do so, and listen for the train." And, as was said in *Brady v. Toledo, etc. Co.*, 45 N. W. (Mich.) 1110, speaking of the plaintiff's duties under the circumstances, "He had no right to close his ears, and drive along without stopping, when he must have known that the noise of his wagon, and of the mill, would shut off the sound from the approaching train." Lester and decedent not only failed to observe these reasonable and necessary precautions, but, with an utter disregard of the inevitable consequences, drove recklessly into danger. In these circumstances, it is unnecessary to determine whether the appellant was guilty of the acts of negligence charged, since the actual and gross neglect of Lester and the decedent directly contributed to produce the injury complained of. Instruction No. 3, while correct as an abstract proposition of law, was misleading. It is conclusively shown by the evidence that it was impossible for the engineer to avoid the collision, after he saw the situation of decedent, by the exercise of the utmost degree of care. It was, therefore, error to submit that proposition of law, in the absence of any facts to which it could be applied.

2.   It is contended by counsel for appellee that; notwithstanding Lester may have been guilty of contributory negligence that would prevent a recovery for his death, it appearing that the plaintiff's husband, Thomas, was merely driving with Lester gratuitously upon his invitation, and, having no control of the movements of the horse, the contributory negli-

gence of Lester would not prevent a recovery by the plaintiff. The court below instructed the jury to this effect. The evidence is conflicting as to whether Lester or Thomas was driving the horse, but we think the jury were justified in finding that Lester was driving, and that Thomas was riding in the buggy at his invitation, and we shall assume this to be the fact in deciding the question of law presented by this instruction.

Upon the question of imputable negligence, as applicable to occupants of private conveyances, there is much conflict among authorities, and we think the weight of authority supports the rule that a person injured by the negligence of a defendant, and the contributory negligence of one with whom the injured person is riding as guest or companion, is that such negligence is not imputable to the injured person; but there is a well-recognized exception to this rule when the injured person is in a position to exercise authority or control over the driver, or is guilty, or fails to exercise such care under the circumstances as he could, and should, exercise under the particular circumstances, to protect himself. This exception is recognized in the following cases: *Township of Crescent v. Anderson*, 114 Pa. St. 643; *Dean v. Penna. R. Co.*, 129 Pa. St. 514, 524; *Brickell v. N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 290, and other cases that might be cited.

Counsel for appellee call our attention to *Dyer v. Erie Ry. Co.*, 71 N. Y. 228, and we are especially asked to read this opinion, not only upon this particular point, but, also, upon the point that it was not incumbent upon Mr. Thomas to stop, look or listen for the train, if the view was so obstructed that he and Lester could not see it if they did stop and look. We have complied with counsel's request, and have carefully read this opinion (as well as numerous other

cases upon the subject), and find that it clearly supports counsel's contention that the negligence of Lester is not imputable to Thomas. We also find that, upon the other proposition, it is directly opposed, not only to the decisions of our own court, but to the great weight of authority in this country.

In the later case of *Brickell v. N. Y. C. & H. R. R. R. Co.*, *supra*, the same court recognizes the exception to the rule, as above stated. This case is very like the case under consideration. The plaintiff was riding and occupying the same seat with the driver of a single horse before a buggy wagon, and paid the driver for carrying him a short distance from the station on the Central road to the village of Palmyra. In crossing an intervening railway track the collision occurred. The time was in the early part of the afternoon, and it had been snowing somewhat before and the wind was blowing while plaintiff was being carried in the buggy with the top raised and closed, except its front, to the crossing. The evidence was to the effect that the railway track could be seen for a good distance at many points on the route, and especially on the south end of the bridge, which the plaintiff and his driver crossed in reaching the crossing where the collision took place, at a distance of 100 or 200 feet from the bridge; that the plaintiff and driver made no further effort after leaving and while passing over the space between the bridge and the crossing, to learn whether a train of cars might be approaching, but drove along till they got within about thirty yards of the crossing, when they, or the horse (probably the horse) first heard the sound of the train approaching the crossing. It does not appear what the plaintiff and the driver were engaged in up to this point from the time of leaving the south end of the bridge. Potter, J., who delivered the opinion of the court, said:

"The evidence in this case indicates to my mind not merely a failure to show that absence of freedom from contributory negligence, which is necessary to be shown, upon the behalf of the plaintiff in order to sustain a recovery for negligence upon the part of a railroad company, but clearly, and beyond any question, the actual existence of negligence of the driver and of the plaintiff, which contributed to the plaintiff's injury. The excuse attempted to be set up for such conduct, that the top of the buggy and the snow and wind rendered it more difficult to hear the noise of an approaching train, seems to prove and emphasize their carelessness and want of attention in making an effort, under those circumstances, to learn there was no train approaching the crossing.    *    *    * They were called upon to use more than ordinary prudence in effecting the crossing under such circumstances."

And, further, speaking to the particular question now under consideration:

"The rule that the driver's negligence may not be imputed to the plaintiff, should have no application to this case. Such rule is only applicable to cases where the relation of master and servant, or principal and agent, does not exist, or where the passenger is seated away from the driver, or is separated from the driver by an enclosure, and is without opportunity to discover danger and to inform the driver of it. *    *    * It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver, to learn of danger and avoid it if practicable."

"The plaintiff was sitting upon the seat with the driver, with the same knowledge of the road, the crossing and environments, and with at least the same, if not better, opportunity of discovering dangers that the driver possessed, and without any embarrassment in communicating them to him."

The rule, in such case, is laid down in *Hoag v. N. Y. C. & H. R. R. R. Co.*, 111 N. Y. 199, where a husband and wife were sitting upon the same seat in a vehicle driven by the husband, and both were killed by a collision at a crossing, and in an action brought against the railroad company, it was held "that she had no right, because her husband was driving, to omit some reasonable and prudent effort to see for herself that the crossing was safe."

We quote thus extensively from the Brickell case, not only because of the similarity of its facts to those in the case at hand, but because it is a decision of a court that has uniformly announced the general rule as to the non-imputability of the negligence of a driver to a passenger, under different circumstances. In *Dean v. Penna. R. Co., supra,* Dean was riding, by invitation, in a lumber wagon driven by one William Fields,. and the court, after a very full discussion and citation of authorities upon the question of imputable negligence, says:

"In some of the states, as in Wisconsin, Michigan and Iowa, a distinction would appear to have been taken between a public and a private conveyance; and, as an examination of the cases cited will show, it has been there held that when the injured person is riding in a private conveyance, by invitation of the driver, and without compensation, the driver will be regarded as his agent, and, upon that ground, the negligence of the latter is imputed to the former. In Pennsylvania, New York, Ohio, Minnesota, and other states, this doctrine of agency is expressly repudiated, and it is held that in such cases the driver's negligence cannot be so imputed."

And, farther on, and speaking as to the particular case then under discussion, the court says: "We are clearly of opinion that if Dean himself was guilty of no negligence, the negligence of Fields cannot be

imputed to him;'' and, after referring to, and distinguishing the case of *Carlisle v. Brisbane*, 113 Pa. 544, it is said:

"Here, however, the facts are of a different character. Dean knew the locality well; he had crossed the tracks frequently at this point; he knew that a train was due about that time, and that he was approaching the railroad track at a fast trot; yet he took no precautions. He was certainly responsible for his own negligence; * * * He said nothing by way of warning to Fields, nor did he ask him to stop to look and listen, or to permit him (Dean) to get out; and the danger was as obvious to Dean as it was to Fields. The testimony is wholly to the effect that the plaintiff committed himself voluntarily to the action of Fields; that he joined him in testing the danger, and he is responsible for his own act.''

The case of *Crescent v. Anderson, supra,* is to the same effect. A Mrs. Anderson was riding on the back seat of a vehicle driven by McKinley, her father; and, finding a bridge in process of repair, McKinley drove through a gully above the bridge. Mrs. Anderson was thrown from the back seat and injured. In the opinion, it is said:

"Under the noting of *Carlisle v. Brisbane,* the negligence of McKinley could not, perhaps, be imputed to her, but she must be held for her own negligence. The danger which was obvious to him was as obvious to her. She made no request of her father to take any other route, or that she might get out of the wagon; she made no objection to crossing the ravine; she willingly joined McKinley in testing the danger, and she is responsible for the consequences of her own act.''

We think the record clearly discloses that the decedent joined with Lester in "testing the danger,'' and should be held responsible for his own conduct

in the premises, which, in the circumstances of the case, was grossly negligent, and contributed directly to produce the unfortunate casualty. Our conclusion is that appellee has no right of action against appellant. The judgment is, therefore, reversed.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.